**Kamal REFAHIYAT, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–9544.

United States Court of Appeals, Tenth Circuit.

July 8, 1994.

Simon M. Azar–Farr, Azar–Farr & Ret, San Antonio, TX, for petitioner.

Alexander H. Shapiro, Office of Immigration Litigation Civil Div., Dept. of Justice (Frank W. Hunger, Asst. Atty. Gen., Civil Div. and Mark C. Walters, Acting Asst. Director, Office of Immigration Litigation Civil Div., were with him on the brief), Washington, DC, for respondent.

Before TACHA and BRORBY, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

This is a petition for review of the order of deportation entered by the Board of Immigration Appeals in connection with the status of Kamal Refahiyat, a native and citizen of Iran. The issue presented is whether the Board properly exercised its discretion in denying petitioner's motion to remand the matter for the purpose of considering his conversion to Christianity and his request for asylum.

The relevant facts in this case do not appear to be in dispute. The petitioner entered the United States in 1977 as an immigrant student. Upon a reported marriage to an American citizen, petitioner's status was adjusted to that of a lawful permanent resident under the provisions of Section 245 of the Immigration and Nationality Act.

On June 9, 1986, the Immigration Service served a notice on petitioner of its intention to rescind his status under Section 246 of the Act because the purported marriage was a sham and fraudulent, entered in solely for the purpose of allowing petitioner to gain permanent immigrant status. An order to show cause was issued on this rescission matter, and a hearing was had on September 15, 1989, at which time he conceded the allegations and the truth of the information concerning his fraudulent marriage.[1] Following such hearing, and on September 15, 1989, it was ordered that petitioner's adjustment of status to that of a lawful permanent resident be rescinded. (Adm.Record, p. 29).

In a separate decision a *de novo* hearing was also had before the immigration judge upon an order to show cause issued against petitioner on November 18, 1986, claiming that he was deportable under the provisions of Section 241(a)(5) of the Immigration and Nationality Act because on November 4, 1986, in the United States District Court for the Central Division of Utah, he was convicted of violation of 8 U.S.C. 1306(c) for filing a false statement under the Act.[2] At this time, petitioner also admitted the charges, thereby conceding his deportability. The immigration judge found that deportability was established by clear, convincing, and unequivocal evidence under the provisions of 8 C.F.R. 242.14(a), and *Woodby v. Immigration Service*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1961).

In connection with the deportability issue, petitioner applied for asylum and the withholding of deportation in June, 1987. This application was admitted as Exhibit 2–A in connection with the deportation hearing. Petitioner stated he sought asylum because he feared he would be persecuted if returned to Iran because he is not a practicing Muslim, that he does not agree with Khomeini's regime, his family "is pro-Shah," that his brothers were arrested and interrogated and watched because they supported the late Shah, that he has participated in anti-Khomeini demonstrations while in Utah and he thinks he has been reported to the Iranian authorities for this behavior. In addition to petitioner's testimony that he thought he might be persecuted in Iran because of his activities in the United States, evidence was admitted in the deportation hearing that petitioner in fact visited Iran for 60 days in 1984 and that his only problem at that time was that he missed one flight from Shiraz to

---

* Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation.

1. Tapes of prior proceedings in this matter were lost, and a *de novo* hearing was held on September 15, 1989.

2. 8 U.S.C. 1306(c) provides in pertinent part that:

> Any alien ... who files an application for registration containing statements known by him to be false, or who procures or attempts to procure registration of himself ... through fraud, shall be guilty of a misdemeanor ... and any alien so convicted shall, upon the warrant of the Attorney General, be taken into custody and be deported in the manner provided in Part V of this subchapter.

> It appears that petitioner was put on probation for 18 months, was fined $750 and required to perform 40 hours of community service following his plea of guilty to the false statement charge.

Tehran because of a delay in searching his bags.[3]

At the deportation hearing, an official opinion from the State Department was received in evidence which was to the effect that petitioner had "not established a well-founded fear of persecution" if he was returned to Iran. (Exhibit No. 3).

Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. 1158(a), states that one seeking asylum in the United States must establish that he is a "refugee." A "refugee" is defined in 8 U.S.C. 1101(a)(42)(A) of the Act as one who has been persecuted or has a well-founded fear of persecution and can't return to his home because of his race, religion, nationality, belonging to a particular social group, or because of political opinion. The immigration judge found that petitioner had failed to carry the burden of proving such "well-founded fear of persecution," and the petition for asylum was denied. In addition, the judge found that petitioner was not entitled to voluntary departure in lieu of deportation because he had been convicted of making ·a false statement. Section 101(f)(6) of the Act provides that one cannot establish good moral character if he has given false testimony in order to procure benefits under the Act, so petitioner's application to withhold deportation under Section 243(h)(1) of the Act, 8 U.S.C. 1253(h), was denied and deportation was ordered.

While the deportation order was on appeal to the Board, petitioner submitted a motion to remand the case because of his recent conversion to the Mormon Church and a request that he be given religious asylum because of his bona fide status as a "practicing Christian." On June 15, 1993, the Board summarily dismissed petitioner's appeal from the deportation decision finding that he had failed to identify any legitimate reasons for appeal. The Board further concluded that he had not proved a prima facie case for religious persecution on account of his conversion to the Mormon Church, and the motion to remand was denied.

In this appeal, petitioner contends that the Board erred in the standards which it applied in determining that remand was not warranted, that remand in this case was required, and that in any event, this court has authority to remand the case under 28 U.S.C. § 2347(c).[4]

 This court reviews *de novo* questions of law determined by the Board, and we review factual findings regarding an alien's status as a "refugee" under the substantial evidence rule. The applicant bears the burden of proof in deportation proceedings, and an asylum applicant "must present specific facts through objective evidence to prove either past persecution or good reason to fear future prosecution." We may not weigh evidence or determine the credibility of witnesses in this review of factual findings. "Even if we disagree with the Board's conclusions, we will not reverse if they are supported by substantial evidence and are substantially reasonable." *Kapcia v. I.N.S.*, 944 F.2d 702,

---

3. The immigration judge summarized petitioner's testimony in this manner:

> The respondent knows only that his father-in-law, in the beginning, was working with the government, and then was arrested, and then upon investigation, was released. He said that he's not sure exactly the charges that his brothers were picked up on, but he said so many of them are picked up because of their looks. He said wearing t-shirts or having long hair does not conform to the profile of what the fundamentalists think that they should look like ... He's against the government. He said that he's afraid that his name has been sent in. He doesn't know that it has, but he just goes on what he has heard ... He said since the Ayatollah Khomeini has died, he thinks that the same fears exist because it would be the same

ideas there now. Although he went back in 1984 and had no problem, if he were sent back now, he would have to hunt for a job ... And he'd have to integrate himself more into the government and the daily activities.

4. In reviewing federal agency orders, 28 U.S.C. § 2347(c) provides in pertinent part that:

> If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce additional evidence and shows to the satisfaction of the court that—
> (1) the additional evidence is material; and
> (2) there were reasonable grounds for failure to adduce the evidence before the agency; the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency....

705, 707 (10th Cir.1991). In *Kapcia*, Polish aliens claimed that because of their past support of the Solidarity Movement in Poland they suffered persecution in the past and feared future persecution if they were returned to their country. Due to changed political conditions in Poland, the Board found that they had failed to establish a "well-founded fear" of persecution sufficient to merit a grant of asylum relief or to establish a "clear probability" of persecution which would merit the withholding of a deportation order.

An alien must prove that he is eligible for asylum by establishing a "well-founded fear" of persecution under the provisions of 8 U.S.C. § 1101(a)(42); and, as in *Kapcia*, the existence of such fear must be established by objective criteria.

> The Circuit Courts of Appeals ... have interpreted the well-founded fear of persecution standard to require a subjective "fear" component and an objective "well-founded" component ... The subjective component requires that the alien's fear is genuine ... *This is not relevant, however, until the alien establishes the objective component* ... In the Ninth Circuit, "the objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." *Aguilera–Cota v. U.S. I.N.S.*, 914 F.2d 1375 [ (9th Cir.1990) ] ... (Other citations omitted) (Emphasis supplied) 944 F.2d at pp. 706–707.

█ Here, petitioner was required to make an "individualized showing" that he is directly threatened by the Iranian government because of his religious conversion in order to establish a prima facie case for asylum, but he failed to do so. See *De Valle v. I.N.S.*, 901 F.2d 787, 791 (9th Cir.1990). Petitioner argues in a conclusive fashion that because he has become a member of the Mormon Church he will be persecuted, but such assertion alone is not sufficient to justify reopening deportation proceedings. See *Sanchez v. I.N.S.*, 707 F.2d 1523 (D.C.Cir. 1983)

█ Merely asserting that one is aligned with a minority religion is not sufficient to establish a prima facie case of religious persecution. See *Yousif v. I.N.S.*, 794 F.2d 236 (6th Cir.1986) where a citizen of Iraq claimed asylum because he was a Christian and would be persecuted or killed by the Iraqi government. In a motion to reopen his case, Yousif submitted an affidavit that he and his family had been harassed and that he had received death threats. The court denied the motion to reopen, finding that since there was no evidence that Yousif had been "singled out" by the Iraqi government, his claim of persecution was not "well-founded." Similarly, in *Shoaee v. I.N.S.*, 704 F.2d 1079 (9th Cir.1983), where an Iranian spoke out "vehemently" against the Khomeini regime, and in *Haftlang v. I.N.S.*, 790 F.2d 140 (D.C.Cir. 1986), where evidence of family affiliation with the Shah's regime as well as constant surveillance were found insufficient to prove prima facie entitlement to asylum.

█ Petitioner's contention that this court may remand the case to the Board under the provisions of 28 U.S.C. § 2347(c) is without merit. While we may grant a motion to remand when a party applies for leave "to adduce additional evidence," petitioner has not presented to this court any additional evidence which he has heretofore failed to bring to the agency's attention. The evidence which he relies on—his conversion to the Mormon religion—has already been presented to and assessed by the Board. Since the Board has already considered that evidence, we may not review the issue *de novo* for we review decisions regarding motions to reopen a case only for abuse of discretion. Remand would be justified only if the Board acted arbitrarily, irrationally, or contrary to law—and such is not the case here.

Our review of the record establishes that the Board applied the correct evidentiary standards of proof, and its factual findings that petitioner failed to establish a well-founded fear of future persecution are supported by substantial evidence. Under all of the evidence, the Board did not abuse its discretion in denying asylum and denying the withholding of deportation. We therefore

AFFIRM the Board's determination in all respects.