69 F.3d 547
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James CHITIMA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-9572.
 United States Court of Appeals, Tenth Circuit.
 Aug. 9, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 BRORBY, United States Circuit Judge.
 
 
 2
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 3
 The petitioner, James Chitima, seeks review of the decision of the Board of Immigration Appeals ("BIA") denying his request for asylum and withholding of deportation. We grant petitioner's motion for leave to proceed in forma pauperis. We have jurisdiction pursuant to 8 U.S.C. 1105a(a), and affirm.
 
 BACKGROUND
 
 4
 Mr. Chitima is a citizen of Zimbabwe who entered the United States in January of 1990 on a student visa. In July of 1990, Mr. Chitima was convicted in the state courts of Missouri of passing bad checks. Mr. Chitima received probation for this offense; however, for reasons that are not clear from the record, his probation was revoked in December of 1992.
 
 
 5
 On May 11, 1993, Mr. Chitima was served with an Order to Show Cause by the Immigration and Naturalization Service ("INS"). He was later taken into custody and transferred to a processing center in Aurora, Colorado. At his hearing, the Immigration Judge ("IJ") found Mr. Chitima deportable for being out of status during the time he was incarcerated for his checking-writing infraction.[2] Thereafter, Mr. Chitima sought relief from deportation in the form of asylum. After a hearing, his request for asylum was denied by the IJ. He appealed to the BIA, which dismissed his appeal on July 27, 1994. It is from this ruling the present appeal is brought.
 
 DISCUSSION
 
 6
 Mr. Chitima argues the BIA erred in concluding his testimony failed to establish, by substantial evidence, that he has a well-founded fear of persecution should he be returned to Zimbabwe.
 
 
 7
 An asylum applicant bears the burden of demonstrating his statutory eligibility for asylum. 8 C.F.R. 208.13(a); Baka v. INS, 963 F.2d 1376, 1378 (10th Cir.1992). In order to demonstrate such eligibility, an applicant must prove his status as a refugee by virtue of either past "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42)(A). In addition, an application for asylum made in deportation proceedings is also deemed a request for withholding of deportation. 8 C.F.R. 208.3(b). An alien seeking withholding of deportation must show his "life or freedom would be threatened" due to one of five enumerated grounds. 8 U.S.C. 1253(h). To meet this burden, he must establish a "clear probability of persecution." INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987); Kapcia v. INS, 944 F.2d 702, 706 (10th Cir.1991). This requires a greater evidentiary showing than the well-founded fear standard for asylum seekers. Cardoz-Fonseca, 480 U.S. at 449; Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir.1994). Thus, if Mr. Chitima has failed to show a well-founded fear of persecution, it follows, a fortiori, that he has failed to show a clear probability of persecution justifying the withholding of deportation. Nguyen v. INS, 991 F.2d 621, 626 (10th Cir.1993).
 
 
 8
 The BIA's finding that an applicant has not established eligibility for asylum or withholding of deportation is a factual determination reviewed for substantial evidence. Bartesaghi-Lay v. INS, 9 F.3d 819, 822 (10th Cir.1993). In order to reverse the BIA's findings, we must find the evidence presented compels the conclusion Mr. Chitima is entitled to asylum or withholding of deportation. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir.1994). With these principles in mind, we turn to the evidence presented on behalf of Mr. Chitima and the BIA's findings.
 
 
 9
 Mr. Chitima sought to support his request for asylum and withholding of deportation through his own testimony and several documents. The BIA summarized the contentions contained therein as follows:
 
 
 10
 In January of 1990, respondent came to the United States to pursue a university education. Prior to his arrival in the United States, respondent lived in Zimbabwe's capitol, Harare, with his family.
 
 
 11
 Respondent's family has been politically active in Zimbabwe since the country's liberation struggles in the 1960s. Respondent's father was a member of Zimbabwe's ruling Zanu PF party until roughly 1987 when respondent's father began to vocally campaign against the socialist direction the party was taking. Respondent's father began to stage rallies and would speak to students and the foreign press against the ruling Zanu PF party.
 
 
 12
 In 1991, after being warned by security officials of the local Zanu PF party to stop criticizing the government, respondent's father was abducted and detained for four months at a private farm outside of Harare. During that time, respondent's father was tortured and interrogated by the secret service regarding his opposition to the Zana PF party.
 
 
 13
 Despite this persecution, respondent's father continued to actively oppose the Zanu PF party. In 1992, respondent's father organized an anti-party demonstration. The security agents of the local Zanu PF party told respondent's father that he had been warned and that there would be trouble. Shortly thereafter respondent's family home in Zimbabwe was bombed, killing respondent's youngest sister who was inside. Fearing for their lives, respondent's immediate family fled Zimbabwe and are presently living in France.
 
 
 14
 During the persecution of his family and while respondent was attending university in the United States, he wrote and sent anti-government articles to the University of Zimbabwe student paper and the Herald, Harare's major newspaper. Thereafter and shortly before the bombing of his home, respondent received letters from the security division of the Zanu PF party. The letters stated that the party was aware of respondent's family's anti-government activities, that respondent's articles were not true, and that there would be trouble if respondent returned to Zimbabwe. The lettera further threatened that respondent or one of his family members would "disappear".
 
 
 15
 Mr. Chitima does not take issue with the BIA's characterization of his supporting evidence, nor does he argue that any critical evidence had been ignored by the BIA. Rather, the essence of his challenge to the BIA's findings concerns the weight given to this evidence. More specifically, Mr. Chitima argues the BIA erred in regarding much of Mr. Chitima's testimony and documentary support for his request to lack credibility. (Pet. Br. at 14-21.) When that evidence is accorded the credibility it deserves, Mr. Chitima contends, it is clear he has established a well-founded fear of persecution. (Id. at 9-14.) As an initial matter, we note it is not at all clear whether determinations of credibility made by the IJ or BIA are reviewable by this court. See Kapcia, 944 F.2d at 707. We note, however, that at least one circuit holds that such determinations are reviewable for substantial evidence, Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992), which must be supported by "specific, cogent reason[s] for disbelief." Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987) (quoting Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986)). Assuming, without deciding the issue, that credibility determinations are reviewable on appeal, we turn to the merits of Mr. Chitima's claim.
 
 
 16
 The BIA found Mr. Chitima's testimony incredible, stating it was "not persuaded of his truthfulness." Likewise, the BIA was not persuaded of the accuracy or truthfulness of Mr. Chitima's documentary evidence. These adverse credibility findings were based on Mr. Chitima's criminal conviction, his false claim to the INS of South African citizenship, the suspect timing of his asylum application, and the likely solicitation of the only threat by the government of Zimbabwe against Mr. Chitima presented in the record. Of these factors, the only one that is even questionable is the authenticity of the letter. Mr. Chitima admitted pleading guilty to a criminal offense, he acknowledged claiming citizenship other than his true citizenship to INS officials, his request for asylum was not made in 1990, at his admission, or in 1991, at the time of his articles and threatening letters, or in 1992, when his family left Zimbabwe, or in mid-1993 with the institution of deportation proceedings.
 
 
 17
 The threatening letter, the only documented support for Mr. Chitima's claim that he faced persecution should he be returned to Zimbabwe, was
 
 
 18
 "an undated, handwritten letter, prepared on letterhead captioned ZANU (PF) TONGOGARA BRANCH,' signed by someone with the title of security agent,' which recounts the nature of the articles written by the respondent and then informs him that he is now among those people who will be persecuted and dealt with ruthlessly upon your return to the country.' "
 
 
 19
 This letter was purportedly received in late 1991; however it was not proffered with the asylum application in December 1993, but months later in March 1994. In addition, the letter noted in great detail the content of the articles Mr. Chitima had written. Moreover, a letter written by a friend of Mr. Chitima's and dated March 29, 1994, appears to make reference to the friends ability to procure a letter from a security official at the Tongogara Branch in which the disputed letter apparently came from.
 
 
 20
 The BIA, in summarizing its view of this letter, stated:
 
 
 21
 "[t]he alleged circumstances by which this letter came to be offered into evidence, the apparent 1994 reference to its creation, 3 years after the respondent claims to have received it, that it was submitted without the envelope in which it was allegedly sent, that it is English, and that it provides great detail as to the contents of the respondent's alleged articles, are all factors that give pause in our assessment of its authenticity. We are left with sufficient doubt as to its veracity so as to accord it no evidentiary value."
 
 
 22
 The BIA also expressed reservations as to the truthfulness of Mr. Chitima's claim that this letter was written in response to articles he had submitted for publication which were critical of the government of Zimbabwe. Mr. Chitima was unable to proffer any of the alleged writings and said he could not be sure if any of them were actually published in the national press, or if so, in what form.
 
 
 23
 We conclude, for precisely those reasons set forth by the BIA, that substantial evidence exists to support the BIA's credibility determination regarding the letter. We note, as an aside, that even if the authenticity of letter could be verified, this would not necessarily be tantamount to a showing that Mr. Chitima faces a clear probability of persecution should he return to Zimbabwe. Given that the authenticity of the sole threat against Mr. Chitima was properly questioned by the BIA, however, there is no question he has failed to show a clear probability of persecution based on threats to him personally.
 
 
 24
 With respect to the significance of the bombing of Mr. Chitima's home in the wake of his father's political activities, the BIA also discounted the claim that this event, and the purported death of his sister resulting therefrom, were the result of the government. Again, we conclude that this credibility determination is supported by substantial evidence in the record.
 
 
 25
 In support of his claims concerning the bombing, Mr. Chitima submitted a letter by his sister, dated February 4, 1994, in which she states that "[o]n January 12, 1992 a bomb exploded at our house in Harare, the capital city, and our youngest sister was killed, and the security organ of the ruling party Zanu PF and the government did claim responsibility." In spite of this alleged claim of responsibility, however, a letter to Mr. Chitima from a friend noted that "since the reporter who worked on the case [of the bombing] had no hard proof, he called off the investigation." Also submitted into the record is a letter written by a former employee of Mr. Chitima's father, who related that Mr. Chitima's sister disappeared in the aftermath of the bombing.
 
 
 26
 Given these conflicting accounts of the circumstances surrounding the bombing of the house as well as the aforementioned facts bearing on the credibility of Mr. Chitima's testimony, we have little difficulty concluding the BIA's decision to regard the evidence of this event as incredible is supported by substantial evidence in the record.
 
 
 27
 Mr. Chitima also suggests the BIA erred in denying his request on the ground his contentions lacked any corroborating evidence. A petitioner's uncorroborated testimony has been held sufficient if it is credible, persuasive, and specific, leaving no doubt threats were made. Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir.1984). In the absence of these factors, specific facts must be supported by objective evidence. Refahiyat v. United States Dept. of Justice, 29 F.3d 553, 556 (10th Cir.1994). Because we conclude the BIA's determination that Mr. Chitima's evidence was not credible is supported by substantial evidence, we also hold the BIA did not err in denying his claim for asylum or withholding of deportation for lack of corroborative evidence.
 
 
 28
 We reject Mr. Chitima's argument the BIA erred in deeming the evidence presented in support of asylum to lack credibility. Accordingly, we need not address the argument that if the evidence is regarded as credible, it supports a withholding of deportation. The decision of the Board of Immigration Appeals is, therefore, AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Mr. Chitima does not contest his deportability