64 F.3d 669
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Parivash ASHKAR-KHEIRANI, Ebrahim Zakerion-Mortezani, Shirin
Zakerion-Mortezaei, Shaghayegh Zakerion-Mortezaei,
Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-9552.
(BIA Nos. Axm-iqs-nqe, Aqk-gfv-vtb, Afl-zoe-ouw, Any-eqx-tel).
 United States Court of Appeals, Tenth Circuit.
 Aug. 25, 1995.
 
 Before TACHA, LOGAN, and BRISCOE, Circuit Judges.
 ORDER AND JUDGMENT[1]
 BRISCOE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioners Parivash Ashkar-Kheirani and her husband Ebrahim Zakerion-Mortezani and their two children are Iranian citizens who appeal from a decision of the Board of Immigration Appeals (Board) upholding an immigration judge's order denying their application for asylum and withholding of deportation pursuant to sections 208(a) and 243(h) of the Immigration and Nationality Act (Act), respectively, 8 U.S.C. 1158(a) and 1253(h). "Our jurisdiction to review the [B]oard's order arises under 8 U.S.C. 1105a(a) and 28 U.S.C. 158 pertaining to review of orders of federal agencies. Our review is limited to the administrative record forming the basis for the deportation order. 8 U.S.C. 1105a(a)(4)." Kapcia v. INS, 944 F.2d 702, 704 (10th Cir.1991)(internal quotation omitted). We affirm.
 
 
 3
 In order to obtain a grant of asylum, an applicant must survive a two-step process. Hadjimehdigholi v. INS, 49 F.3d 642, 646 (10th Cir.1995). The first step is to establish that the applicant is a refugee as defined by the statute; the second step is to win the discretionary grant of asylum from the Attorney General. Id. We are concerned here with the first step. "To establish refugee status, the alien must prove either past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. (internal quotations omitted). The asylum applicant bears the burden of proof, Refahiyat v. INS, 29 F.3d 553, 556 (10th Cir.1994), and "must present specific facts through objective evidence to prove either past persecution or good reason to fear future persecution," Kapcia, 944 F.2d at 707 (internal quotations omitted). To show a well-founded fear of persecution, the applicant must first establish that "the fear is objectively reasonable by proving 'facts that would support a reasonable fear that the petitioner faces persecution.' " Hadjimehdigholi, 49 F.3d at 646 (quoting Kapcia, 944 F.2d at 706). "Persecution has been defined as the offensive infliction of suffering or harm and encompasses more than just restrictions or threats to life and liberty." Id. (internal quotation omitted).
 
 
 4
 Petitioners entered the United States as nonimmigrant visitors in 1988 and remained longer than authorized. Having conceded deportability, Parivash filed an application for asylum. Only Parivash, the adult female of this family, submitted an application for asylum. The immigration judge treated the other family members as " 'riding' " on her application. R. at 30. Such an application for asylum is automatically considered an application for temporary withholding of deportation under INA 243(h). 8 C.F.R. 208.3(b), 208.16. Both Parivash and her husband, Ebrahim, submitted affidavits in support of the application.
 
 
 5
 Petitioner Parivash's affidavit basically reflects that she and her family were pro-Western and chose not to support or participate in the recent Islamic fundamentalist revolution in Iran. For this, they were subject to various degrees of official and unofficial retribution. Parivash was briefly expelled from school; her father and husband were harassed at work; her father and brothers were jailed and beaten; the family was watched and questioned; many friends were jailed and executed; graffiti was painted on their house; and her husband was denied employment, transferred to a "war zone," and later forbidden to leave the country. R. at 173-79. In addition, Parivash stated that, "I was pregnant with my first child and the pressure was making me sick and causing me to loose [sic] a lot of blood." Id. at 175.
 
 
 6
 Ebrahim's affidavit indicates that he lost his job, was questioned about the activities of his brother-in-law, was watched and "slapped around" by the authorities, and that the family was forced to move frequently to avoid detection. Id. at 340-42. Petitioners were eventually able to leave Iran by bribing their way to neighboring Turkey.
 
 
 7
 At the deportation hearing, petitioners told a much more compelling story. Parivash testified that she had been beaten so severely that her pregnancy had been threatened. Id. at 83. Ebrahim testified that he had joined the Mujahedin. Id. at 130. Both alleged arrests, detentions, and beatings unmentioned in their earlier affidavits.
 
 
 8
 The immigration judge denied petitioners' application, finding them unqualified for asylum or withholding of deportation because of the numerous discrepancies between their written request for asylum and their oral testimony. He found that petitioners failed to satisfy their burden of proving "that they had either been persecuted during the years that they resided in Iran or have a well-founded fear of persecution should they return at this time." Id. at 35. The decision of the immigration judge was affirmed by the Board.
 
 
 9
 On appeal, petitioners argue that the Board's conclusion that they failed to establish their eligibility for asylum is not supported by substantial evidence. Specifically, they urge that the Board erred in affirming the immigration judge's conclusion that the adult petitioners had not testified credibly based solely on the discrepancies between their affidavits and their later testimony at the deportation hearing.
 
 
 10
 "We review the Board's findings to determine whether reasonable, substantial and probative evidence supports them and may reverse only if petitioner presented evidence that compels the conclusion he has a well-founded fear of persecution based on a statutory factor." Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir.1994) (citing INS v. Elias-Zacarias, 502 U.S. 478, ---- & n. 1, 112 S.Ct. 812, 815 & n. 1 (1992)). Credibility determinations made by an immigration judge are given much weight. See Dulane v. INS, 46 F.3d 988, 998 (10th Cir.1995)(citing Estrada v. INS, 775 F.2d 1018, 1021 (9th Cir.1985)); see also Refahiyat, 29 F.3d at 556 (refusing to "weigh evidence or determine the credibility of witnesses" in a review of factual findings).[2]
 
 
 11
 Guided by this standard of review, we affirm. In particular, after having reviewed the record and compared the statements and tenor of the affidavits with the transcript of the hearing, we are struck, as was the immigration judge, by the discrepancy between the two accounts. The conclusion by the immigration judge that petitioner and her husband were not credible in their attempts to prove a well-founded fear of persecution is supported by substantial evidence. Our review of this record does not "compel" the conclusion that petitioners have a well-founded fear of persecution, a standard which must be met before we may reverse. See Elias-Zacarias, 112 S.Ct. at 815 & n. 1.
 
 
 12
 While we acknowledge that a petitioner in a deportation hearing cannot merely rest on the details of his or her affidavit and that added detail and additional facts may often emerge during the course of a hearing, that scenario is different than what occurred in this case. Here, petitioner and her husband testified to events at the hearing that were so much more serious than those described in their affidavits, the logical conclusion is that the testimony at the hearing was fabricated.[3]
 
 
 13
 Petitioners repeatedly complain that the Board did not examine the record as a whole. We note that, on appeal, this court has examined the record as a whole and, further, that it is unnecessary for the Board to specifically address each piece of evidence encompassed in its review. Hadjimehdigholi, 49 F.3d at 648 n. 2. "Although the BIA is required to provide more than just 'conclusory statements, all that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided.' " Id. (quoting Becerra-Jimenez v. INS, 829 F.2d 996, 1000 (10th Cir.1987)). We are satisfied that the Board made an adequately thorough inquiry.
 
 
 14
 Petitioners finally argue that problems with the translator at the deportation hearing deprived them of a fair hearing. This issue was not raised before the Board, and we will not consider it for the first time on appeal. See Sadeghi, 40 F.3d at 1143.
 
 
 15
 The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Petitioner argues that no deference is due the credibility decision of the immigration judge because his finding was based on discrepancies between the affidavits and the oral testimony, a matter discernible and reviewable from the record. Petitioner, however, ignores the fact that the judge also explicitly based his credibility finding on the demeanor of the witnesses. R. at 35. We are neither willing nor able to second-guess a judge's findings based on demeanor
 
 
 [3]
 Petitioners emphasize that the immigration judge did not find that they had testified falsely. However, we read the judge's opinion as a grant of leniency to petitioners who could not leave the country voluntarily had the court determined that false testimony had been offered. The judge stated:
 At best their testimony and representations are perceived as having been exaggerated, and it is only out of consideration for the two minor respondents who did not appear before the Court, who did not testify, that the Court would at least grant them the benefit of the doubt and not find that they testified falsely in support of the asylum applications such as would impact on their eligibility for minimum consideration of voluntary departure.
 R. at 36.