F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MAHBUBUR RAHMAN and SONIA
P. RAHMAN,

      Petitioners-Appellants,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

      Respondent-Appellee.

No. 97-9527
Board of Immigration Appeals
(Nos. A70 801 408,
A73 373 063)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BRISCOE**, **LUCERO**, Circuit Judges.

Mahbubur Rahman (Mahbubur) and Sonia Rahman (Sonia) appeal the decision of the Board of Immigration Appeals (BIA) denying their applications for asylum and withholding of deportation. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.

The Rahmans are husband and wife and both are natives and citizens of Bangladesh. Mahbubur became involved in the student wing of the Jatiyo Party while he was a student at Titumir College in Dhaka, Bangladesh, and served as assistant general secretary and later as general secretary. The Jatiyo Party was the ruling party until 1991 when it lost control to the Bangladesh National Party (National Party). Mahbubur graduated from college in 1986, but continued to be active as a student leader of the Jatiyo Party until 1992.

Mahbubur testified that, as he returned from work in August 1991, he was attacked by five or six members of the National Party. The attackers used sticks and knives and told him he would be killed if he did not cease political activities. He escaped without serious injury when passers-by heard his screams. He was again attacked in September 1992 with sticks and knives, and he recognized Kamruzzaman Ratan, a famous leader of the National Party. The attackers ran away after a crowd gathered. He was hospitalized for ten days following the second attack, suffering epistaxis (nosebleed) and multiple bruising due to blunt injury, and was prescribed fifteen days' of complete bed rest upon his release. He went into hiding upon his release from the hospital.

Mahbubur entered the United States on January 1, 1993, and his visa expired May 5, 1993. He filed a request for asylum on April 19, 1993, and his

request was denied on March 10, 1994, by the Houston INS office. In response to an order to show cause why he should not be deported, he conceded deportability on December 15, 1994, and requested withholding of deportation and asylum. He testified that if he returns to Bangladesh, he will be killed or put in jail. His family attorney has warned him the government has issued a warrant for his arrest on a weapons charge, of which he claims he is innocent.

Sonia's mother, Syeda Jahan, was vice president of the Jatiyo women's organization. She testified the National Party threw her out of her house, threatened her and her children, and put her in jail in mid-May 1991, and that she believed the National Party had beaten her son because of her political involvement. She entered the United States in August 1991 and, on March 24, 1994, INS determined she had a well-founded fear of persecution and granted asylum.

Sonia testified the National Party wanted to kill her because of her husband's and mother's ties to the Jatiyo Party. She went into hiding in 1991 after her mother left Bangladesh. She entered the United States on June 14, 1994, and her visa expired on December 13, 1994. In response to an order to show cause why she should not be deported, she filed an application for asylum and for withholding of deportation on March 16, 1995.

A deportation hearing was conducted on April 17, 1995, for Mahbubur, but the immigration judge (IJ) continued the case for consolidation with Sonia's case. Both cases were heard on January 4, 1996, and the Rahmans' applications for withholding of deportation and asylum were denied. The denial was affirmed by the BIA on May 14, 1997.

## II.

The Immigration and Nationality Act established a two-part test for determining whether a deportable alien is statutorily eligible for asylum. Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir. 1994). The alien must show he or she is a refugee by proving either past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Id. Persecution is defined as "the offensive 'infliction of suffering or harm.'" Hadjimehdigholi v. INS, 49 F.3d 642, 646 (10th Cir. 1995) (quoting Zalega v. INS, 916 F.2d 1257, 1260 (7th Cir. 1990)).

If the alien establishes eligibility as a refugee, the Attorney General may, in her discretion, grant asylum. See Castaneda, 23 F.3d at 1578. The Attorney General may exercise her discretion to deny asylum if there is little likelihood of present persecution. Kapcia v. INS, 944 F.2d 702, 709 (10th Cir. 1991). There is a rebuttable presumption, however, that an alien who has experienced past persecution has reason to fear similar persecution in the future. Id.

-4-

To establish eligibility for the withholding of deportation, an alien must prove a "clear probability of persecution" upon deportation. Rezai v. INS, 62 F.3d 1286, 1289 (10th Cir. 1995). This "clear probability" test is more stringent than the well-founded fear test used in the asylum context. Id. at 1289. Unlike asylum determinations, however, the Attorney General has no discretion to deny withholding of deportation to aliens who demonstrate eligibility. Id.

We review factual findings by the BIA under the substantial evidence standard and do not weigh evidence or evaluate witnesses' credibility. Kapcia, 944 F.2d at 707. Even if we disagree with the BIA's conclusions, we will not reverse if its findings are supported by substantial evidence and are substantially reasonable. Id.

**III.**

*Application of Correct Standard by IJ*

In denying the Rahmans' applications, the IJ found they had not "submitted a credible record." Certified Admin. R. at 38. The IJ stated: "My finding is that even if I can believe this story, which is hard to believe, neither respondent has shown a well-founded fear of persecution." Id. at 39. The Rahmans infer from this statement that they were required to demonstrate both past persecution *and* a well-founded fear of future persecution. However, to be considered a refugee, an

alien need only show past persecution *or* a well-founded fear of future persecution. The Rahmans argue the ruling was therefore erroneous and the BIA erred as a matter of law in affirming the IJ's ruling.

The IJ specifically found a lack of credibility concerning Mahbubur's past persecution and that he also failed to show a well-founded fear of persecution. In regard to Sonia, whose asylum claim was based solely on fear of persecution, the IJ found she did not have a well-founded fear. Therefore, the necessary findings were made. Further, the BIA clearly applied the correct law in affirming the ruling. It found Mahbubur's testimony, without corroborating testimony, was not sufficiently plausible, detailed, or internally consistent to support his claim of past persecution. The BIA also concluded neither Mahbubur nor Sonia had a well-founded fear of persecution. The Rahmans' argument that the BIA affirmed an erroneous conclusion by the IJ is therefore without merit.

*Findings Regarding Mahbubur by BIA*

The testimony of an applicant for asylum may be sufficient to sustain the burden of proof, without corroboration, if the testimony is credible. 8 C.F.R. § 208.13(a). The applicant must present specific, credible evidence to support a claim that he has been persecuted or will be persecuted if deported. Rezai, 62 F.3d at 1289. Inconsistencies in an applicant's testimony support a conclusion

that testimony is not credible.  Id. (statement in asylum application that applicant had been beaten on "one occasion" and testimony that applicant had been "beaten up many times" supported conclusion testimony was not credible).

Mahbubur's testimony regarding the number of people who attacked him in 1992 was inconsistent.  In his January 12, 1995, affidavit, he stated he recognized members of the National Party and that Ratan "had with him a group of 4 to 5 younger individuals who [were] also [known] to be student[] leaders for the [National Party]."  Certified Admin. R. at 145.  At his April 17, 1995, hearing, however, he testified he saw nine or ten student leaders and that eight or nine people attacked him.  With regard to his 1991 attack, he stated in his March 31, 1993, affidavit that Monu, his best friend at one time, participated in the attack.  However, at his hearing he admitted he did not know Monu's last name.  Most significant is the discrepancy regarding Ratan's participation in the two attacks.  Mahbubur stated in his January 12, 1995, affidavit that he "saw no specific leader" in the 1991 attack, but that Ratan was present at the 1992 attack.  At his hearing, he testified that Ratan, "the most famous leader" in the National Party, was involved in both attacks.

Mahbubur attributes some of the inconsistencies to his lack of fluency in English.  An interpreter was used at the January 4, 1996, hearing, but none was used at the April 17, 1995, hearing.  An interpreter is essential to the fundamental

fairness of a deportation hearing when the alien cannot speak English fluently. Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir. 1980). The record reveals the IJ offered an interpreter at the April 17, 1995, hearing, but Mahbubur declined the offer. Further, he did not raise the language problem before the BIA. Such failure constitutes a failure to exhaust administrative remedies with respect to the question and this court lacks jurisdiction to address the matter. Rivera-Zurita v. INS, 946 F.2d 118, 120 n.2 (10th Cir. 1991).

Mahbubur also submits the inconsistencies are not material to his claim for asylum. There is no dispute with regard to the most convincing evidence of past persecution, i.e., that he was hospitalized for ten days and then prescribed fifteen days' bed rest when he was discharged. The BIA rejected the claim of past persecution on the basis that, without corroborating evidence, the testimony was not sufficiently plausible, detailed, or internally consistent. However, the testimony of hospitalization was corroborated by a medical report. On the other hand, the record does not contain evidence to corroborate Mahbubur's testimony as to the reason for the attacks. An alien must show persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). While the medical report corroborates Mahbubur's injuries, it does not corroborate his testimony that he was attacked because of his membership in the Jatiyo Party or his political opinions.

The IJ found Mahbubur was lacking in credibility. "Because the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given 'much weight.'" Dulane v. INS, 46 F.3d 988, 998 (10th Cir. 1995) (quoting Estrada v. INS, 775 F.2d 1018, 1021 (9th Cir. 1985)). The BIA agreed that Mahbubur had failed to provide sufficiently credible testimony to support his claim of past persecution. To reverse the BIA, this court must find the evidence compels a contrary conclusion. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992). In light of Mahbubur's inconsistent and for the most part uncorroborated testimony regarding past persecution, we affirm the BIA's conclusion that Mahbubur did not prove he is entitled to refugee status on the basis of past persecution.[1]

*Findings Regarding Sonia by BIA*

Sonia contends the BIA erred in concluding she did not have a well-founded fear of persecution without making a finding of adverse credibility. The BIA affirmed the IJ's adverse credibility finding as to Mahbubur but it did not make the same finding as to Sonia. The BIA did note Sonia's testimony regarding her husband's hospitalization was inconsistent with the medical report. In any

---

[1] The BIA also concluded Mahbubur did not have a well-founded fear of future persecution. Mahbubur did not appeal this finding, however, and we do not address it.

event, the BIA denied Sonia refugee status not because it did not believe her but because the record did not demonstrate the Bangladesh government was inclined to punish her because of her ties to the Jatiyo Party.

To be entitled to refugee status on the basis of a well-founded fear of persecution, an alien must prove the feared persecution is "on account of race, religion, nationality, membership in a particular social group, or political opinion." Castaneda, 23 F.3d at 1578. Persecution on account of membership in a particular social group encompasses persecution of an individual who is a member of a group of persons, all of whom share a common, immutable characteristic. Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir. 1993). The shared characteristic might be an innate one, such as sex, color, or kinship ties. Id.

Sonia argues the IJ and the BIA failed to address her membership in a particular social group, i.e., her family. See, e.g., Hernandez-Ortiz v. INS, 777 F.2d 509, 515 (9th Cir. 1985); Ananeh-Firempong v. INS, 766 F.2d 621, 627 (1st Cir. 1985) (noting relevance of treatment of petitioner's family members). She contends the BIA never inquired as to how her relationship with her mother affected her asylum claim.

Both the IJ and the BIA addressed the issue of Sonia's mother. Sonia testified at the January 4, 1996, hearing that her mother was granted asylum. Sonia's application for asylum, with an affidavit explaining the circumstances of

her mother's asylum attached, was admitted into evidence. The IJ stated that he "very carefully" considered the fact that INS had granted Sonia's mother asylum. Certified Admin. R. at 40. The IJ discussed Sonia's claims that her mother had been politically active and had been politically harassed because of her involvement. The IJ examined the affidavit of Sonia's mother in which she stated the National Party threatened to kill her and kidnap her children, and that she believed her son had been beaten by National Party members. Sonia's affidavit contained no assertions of threats made directly to her, however, and she later testified that she had not been personally threatened because of her mother's activities.

The BIA addressed de novo the evidence of Sonia's fear of persecution because of her mother's activities.[2] The BIA reviewed evidence that Sonia's mother was vice president of the Jatiyo Women's League, that her family had been threatened with death because of her activities, and that she had been granted asylum. There was also evidence that Sonia went into hiding after Mahbubur left Bangladesh and that the National Party was searching for Sonia with hopes of thereby getting Mahbubur and Sonia's mother back in Bangladesh.

---

[2] The Rahmans are troubled by the fact the BIA did not specifically refer to Jahan's affidavit. As the INS points out, however, this is likely because the Rahmans did not reference the affidavit in their brief to the BIA.

The BIA concluded Sonia did not have a well-founded fear of persecution as she was not herself politically active in Bangladesh.

The BIA reviewed the State Department's report on human rights practices in Bangladesh. U.S. Dep't of State, Country Reports on Human Rights Practices for 1994, S. Prt. 104-12 (1995) (Country Reports). While the National Party won a plurality of seats in the 1991 election, the Jatiyo Party is a significant opposition party with members comprising twenty to thirty percent of the country's legislature. Country Reports did acknowledge that "[v]iolence, often resulting in killings, is a feature of the political process. Demonstrators *from all parties, and even within parties*, often clash." Certified Admin. R. at 135 (emphasis added). To be eligible for asylum, however, an alien's fear of persecution must be based on more than general conditions of upheaval and unrest in his native country. Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 1000 (4th Cir. 1992). The BIA concluded the record did not demonstrate the government was inclined to punish Sonia because of her ties to the Jatiyo Party.

Family affiliation with an unpopular political movement, standing alone, is insufficient to warrant asylum. Refahiyat v. United States Dep't of Justice, 29 F.3d 553, 557 (10th Cir. 1994). Further, a grant of asylum to an applicant's parent is relevant only to the Attorney General's discretionary decision to grant

-12-

asylum to the applicant, not to the preliminary determination of the applicant's refugee status. Bereza v. INS, 115 F.3d 468, 476 (7th Cir. 1997).

More significant than the grant of asylum to Sonia's mother is the fact that Sonia did not leave Bangladesh until almost three years after her mother left. Neither Sonia's testimony nor her mother's affidavit describes any threats or harassment directed to Sonia subsequent to her mother's departure. The fact that so much time passed without incident supports the BIA's conclusion that the government was not inclined to punish Sonia because of her ties to the Jatiyo Party. See Nazaraghaie v. INS, 102 F.3d 460, 463 (10th Cir. 1996) (passage of eleven months without incident following alien's release from jail indicated alien's fear of persecution was not well founded); see also Chavarria v. United States Dep't of Justice, 722 F.2d 666, 670-71 (11th Cir. 1984) (withholding of deportation denied where applicant remained in Nicaragua for two years after events which triggered persecution of fellow employees, and petitioner was not persecuted during that two-year period).

Finally, the Rahmans argue the BIA misapplied the criteria relevant to a determination of well-founded fear as enunciated by the BIA in In re Mogharrabi, 19 I. & N. Dec. 436, 446, 1987 WL 108943 (B.I.A. 1987). Under Mogharrabi, the evidence must establish:

> (1) the alien possesses a belief or characteristic a persecutor seeks to overcome in others by means of punishment of some sort;

(2) the persecutor is already aware, or could easily become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and (4) the persecutor has the inclination to punish the alien.

Id. at *15. The BIA assumed Sonia satisfied the second and third factors, but found she did not possess a belief or characteristic which the government sought to overcome by punishment. Sonia contends the government sought to overcome in her the characteristic of membership in her mother's family. She also maintains the government imputed her mother's political beliefs to her and sought to overcome those beliefs. See Lazo-Majano v. INS, 813 F.2d 1432, 1435 (9th Cir. 1987) (recognizing persecutor's imputation of belief to alien can place alien at risk). Assuming, arguendo, Sonia satisfies the first factor, she does not show how she satisfies the fourth factor, i.e., that the National Party is inclined to punish her. As noted, the passage of three years without incident following Sonia's mother's departure supports the BIA's conclusion that the government is not inclined to punish Sonia because of her ties to the Jatiyo Party.

Because Mahbubur's testimony regarding his past persecution was insufficient to establish eligibility for asylum, Sonia's claim for asylum fails to the extent it relies on her association with him. Nor, as discussed above, has Sonia demonstrated eligibility for asylum based on her mother's political activities. There is substantial evidence to support the BIA's finding that Sonia did not have a well-founded fear of persecution upon her return to Bangladesh.

-14-

Since the Rahmans have failed to establish statutory eligibility for a grant of asylum, i.e., that they are refugees, they cannot meet the tougher standard required for withholding of deportation. Rezai, 62 F.3d at 1289. There is substantial evidence to support the BIA's denial of the withholding of deportation.

## IV.

The decision of the Board of Immigration Appeals is AFFIRMED. Petitioners' motion to respond to respondent's supplemental citation is GRANTED. Petitioners' request to preclude our consideration of Elboukili v. INS, 125 F.3d 861 (Table), 1997 WL 616222 (10th Cir. Oct. 7, 1997) is DENIED.

Entered for the Court

MARY BECK BRISCOE
Circuit Judge