Saeed **REZAI**, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE**, Respondent.

No. 94–9555.

United States Court of Appeals, Tenth Circuit.

Aug. 14, 1995.

Oscar W. McConkie III, of Kirton & McConkie, Salt Lake City, UT, for petitioner.

Pauline C. Terrelonge, Atty., Civ. Div., Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC (Lauri Filppu, Deputy Director, Civ. Div., Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, with her on the brief), for respondent.

Before SEYMOUR, Chief Judge, BARRETT, Circuit Judge, and DAUGHERTY, District Judge.[*]

SEYMOUR, Chief Judge.

Saeed Rezai, an Iranian citizen, challenges the decision of the Board of Immigration Appeals (BIA) denying his requests for asylum and withholding of deportation. Mr. Rezai also contends that the BIA should have remanded his case for reopening of the deportation proceeding, thus allowing the immigration judge to adjust his status on the basis of his second marriage to a United States citizen. We affirm.

## I.

## BACKGROUND

Mr. Rezai left Iran in 1979 and, after residing in Germany for seven years, entered the United States on a student visa in 1986. He testified that the installation of the Khomeini regime played a role in his decision to leave Iran at age twenty-one.[1] Rec., vol. I, at 131–32. His father was a high-ranking official in the Shah's government, and his uncle served as a general in the Iranian army. The Khomeini government subsequently froze his father's assets and imprisoned his uncle for two years. Both men continue to live in Iran.

Mr. Rezai claims that he was very involved in the Council of Iranian Royalists during his

---

[*] The Honorable Fred Daugherty, Senior United States District Judge for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation.

1. Mr. Rezai also testified that he left Iran in order to attend a German university. Rec., vol. I, at 132. He felt he could not attend an Iranian university because he did not believe as strongly in the Islamic faith as the Khomeni regime required. *Id.* Additionally, he had "lots" of family in Germany, and his father had attended a university there. *Id.*

years in Germany. He testified that in addition to attending meetings and distributing flyers, he made approximately one hundred speeches for the pro-Shah organization. *Id.* at 136. His application for United States residency, however, contains no reference to these activities, nor does it list the Council of Iranian Royalists as a group of which he was a member. *Id.* at 157–58. Although he now asserts that he came to the United States in order to escape persecution by Khomeini loyalists in Germany, he entered this country on a student visa in 1986 and did not file an application for asylum until eight months after deportation proceedings began in 1990. *Id.* at 165, 251.

Upon entry into the United States, Mr. Rezai enrolled at Westminster College in Utah and procured a job as a campus security guard. He graduated from Westminster in June 1990 but continues to be a full-time employee of the college. His duties include raising the American flag, an activity which he claims has subjected him to criticism from fellow Iranians.

In 1988, Mr. Rezai was granted conditional permanent resident status on the basis of his marriage to a United States citizen, Margaret Schantz. One year later, Ms. Schantz executed a sworn statement to an INS officer alleging that her marriage to Mr. Rezai had never been consummated and that he had married her solely to obtain residency. She also accused Mr. Rezai of threatening her and claimed that she had lived with him only because she could not afford to move. Mr. Rezai denies these accusations. Ms. Schantz filed for a divorce, which became final on June 1, 1990, and withdrew her petition for his permanent residency. The INS subsequently terminated Mr. Rezai's conditional resident status and initiated deportation proceedings.

Mr. Rezai challenged the deportation at two separate hearings before the immigration judge. First, he sought a waiver of the requirement that he and his wife file a joint petition for the removal of the conditional basis of his residency. *See* 8 U.S.C. §§ 1186a(c)(1) & (4) (1988). A waiver is available where deportation would result in extreme hardship or where the alien can prove that he married in good faith even though the marriage was subsequently terminated. *Id.* at § 1186a(c)(4). At the second hearing, Mr. Rezai attempted to establish his eligibility for asylum or withholding of deportation. *See* 8 U.S.C. §§ 1158(a), 1253(h) (1988).

The immigration judge denied Mr. Rezai's request for a waiver [2] and, finding his allegations of past and future persecution incredible, held him ineligible for asylum or withholding of deportation. The judge found him to be deportable but granted him the option of voluntary departure. Mr. Rezai appealed to the BIA, alleging that the immigration judge had erred in denying his various motions. He also filed a motion to remand his case to the immigration judge to allow for the adjustment of his status on the basis of his marriage to a second United States citizen, Julie Wegner, whom he married after his deportation proceedings began.[3] The BIA dismissed the appeal and denied the motion to remand. Mr. Rezai then filed this petition for review.

## II.

### ASYLUM AND WITHHOLDING OF DEPORTATION

An alien facing deportation who fears persecution if deported has two avenues of relief: asylum and withholding of deportation. *Kapcia v. I.N.S.*, 944 F.2d 702, 706 (10th Cir.1991). We examine each in turn.

### A. *Asylum*

 The Attorney General retains the discretion to grant asylum to those aliens who qualify as "refugees." 8 U.S.C.

---

2. Mr. Rezai appealed the denial of the waiver to the BIA but does not continue this challenge here. Therefore, we need not address whether he demonstrated that he married Ms. Schantz in good faith or whether his deportation would result in extreme hardship.

3. Ms. Wegner has filed a petition requesting residency for Mr. Rezai. The Immigration Judge denied her petition because of the allegedly fraudulent nature of Mr. Rezai's first marriage. Ms. Wegner's appeal to the BIA is pending.

§ 1158(a). We have noted that a grant of asylum requires two steps. *Kapcia,* 944 F.2d at 706. First, the alien must establish that he is a refugee by proving either past persecution or a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1988); *Nguyen v. I.N.S.,* 991 F.2d 621, 625 (10th Cir.1993). We defer to the BIA's factual determination of whether the alien is a refugee if those findings are supported by substantial evidence. *Bartesaghi–Lay v. I.N.S.,* 9 F.3d 819, 822 (10th Cir.1993). Second, the Attorney General exercises her discretion to grant or deny asylum. *Kapcia,* 944 F.2d at 708. We review this decision only for an abuse of discretion. *Nguyen,* 991 F.2d at 625.

■ Mr. Rezai must present specific, credible evidence to support his claim that he has been persecuted or will be persecuted if deported. He alleges that he demonstrated past persecution by Khomeini loyalists in Germany and that the BIA failed to consider this evidence. The BIA, however, specifically questioned the credibility of his testimony regarding his activities in Germany. Rec., vol. I, at 10. In his testimony before the immigration judge, Mr. Rezai claimed to have been "beaten up many times" by Khomeini sympathizers. *Id.* at 137. In his application for asylum, though, he stated that he had been beaten by Khomeini supporters on "one occasion." *Id.* at 169. Such an inconsistency supports the BIA's conclusion that Mr. Rezai's testimony regarding his alleged persecution in Germany was not credible.

Mr. Rezai also contends that the BIA erroneously classified his evidence of potential persecution in three groups[4] and applied the "well-founded fear" test to each group individually. He asserts that the BIA consequently "never considered the cumulative effect of that evidence." Pet. Reply Br. at 3. We need not analyze the processes of the BIA as long as the final determination is supported by substantial evidence. Upon careful consideration of the pertinent parts of

the record, including Mr. Rezai's testimony and documentation supporting his claim for asylum, we conclude that substantial evidence supports the BIA's determination that Mr. Rezai does not have a well-founded fear of persecution upon deportation.

Because we hold Mr. Rezai did not meet his burden of establishing eligibility for asylum, we need not address whether the BIA's denial of asylum constituted an abuse of discretion. *Nguyen,* 991 F.2d at 625–26.

### B. *Withholding of Deportation*

■ Unlike asylum determinations, the Attorney General has no discretion to deny withholding of deportation to eligible aliens. "The Attorney General shall not deport ... any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1). To establish eligibility for this relief, the alien must prove a "clear probability of persecution" upon deportation. *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987). We have held that this "clear probability" test is more stringent than the well-founded fear test used in the asylum context. *Nguyen,* 991 F.2d at 626. "[B]ecause [Mr. Rezai] failed to meet the threshold burden of establishing statutory eligibility for the grant of asylum, it is clear that he did not meet the tougher standard required for withholding of deportation." *Id.* Substantial evidence therefore supports the BIA's denial of this relief.

### III.

### MOTION TO REMAND: THE *ARTHUR* RULE

Mr. Rezai also appeals the BIA's denial of his motion to remand his case to allow the immigration judge to adjust his status on the basis of his recent marriage to Julie Wegner. The couple married on June 15, 1991, six

---

4. The three groups consisted of Mr. Rezai's family connections in Iran, his activities in Germany, and his activities since coming to the United States. Rec., vol. I, at 7–8.

months after the immigration judge entered his deportation order.

Ms. Wegner, an American citizen, filed a petition in a separate proceeding seeking to classify Mr. Rezai as an alien relative for the issuance of an immigrant visa. Although the INS district director did not question the validity of Mr. Rezai's marriage to Ms. Wegner, he denied the petition because substantial and probative evidence suggested that Mr. Rezai had previously attempted to obtain immigration benefits through a fraudulent marriage. *See* 8 U.S.C. § 1154(c). Ms. Wegner has appealed this decision to the BIA.

As Ms. Wegner's visa petition made its way through the proper INS channels, the BIA reviewed Mr. Rezai's appeal of his deportation order and his motion to remand. Because the couple married after the commencement of Mr. Rezai's deportation proceedings, the BIA denied his motion for remand on the basis of its rule announced in *Matter of Arthur,* Interim Dec. 3173, 1992 WL 195807 (BIA). Mr. Rezai now asserts that the *Arthur* rule is unconstitutional. We disagree.

"A motion to reopen deportation proceedings to consider a newly-acquired claim of relief from deportation will generally be denied where the moving party fails to make a prima facie showing of eligibility for the relief sought." *Pritchett v. I.N.S.,* 993 F.2d 80, 83 (5th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993) (citing *I.N.S. v. Doherty,* 502 U.S. 314, 323, 116 L.Ed.2d 823, 112 S.Ct. 719, 724–25 (1992)). In 1978, the BIA held that a pending visa petition which is prima facie approvable is sufficient to make a prima facie showing for purposes of the motion to reopen. *In re Garcia,* 16 I & N Dec. 653 (BIA 1978). Under the *Garcia* rule, the BIA presumed that a marriage between an alien and a United States citizen was legitimate and granted the motion to reopen deportation proceedings even before adjudication of the petition for immediate relative status.

Congress changed the landscape on this issue by amending the procedures by which visa petitions are adjudicated. In 1986, Congress provided that "a petition may not be approved to grant an alien immediate relative status ... by reason of a marriage which was entered into [after deportation proceedings have begun] until the alien has resided outside the United States for a two-year period beginning after the date of the marriage." 8 U.S.C. § 1154(g) (1988).[5] In 1990, Congress passed an exception to the 1986 amendment, providing that the two-year requirement would not apply "with respect to a marriage if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith." 8 U.S.C. § 1255(e)(3) (1988 Supp. II).

In *Arthur,* the BIA explored how these amendments to the rules governing adjudication of visa petitions would impact motions to reopen deportation proceedings. The BIA held that the amendments required rejection of *Garcia*'s presumption that marriages entered into after deportation proceedings have begun are legitimate. Because the amendments presume such marriages are fraudulent, the BIA concluded that it would reject motions to reopen deportation proceedings while visa petitions are pending. The BIA held that because the petitioner in a deportation proceeding bears the burden of demonstrating prima facie eligibility for an adjustment of status,

> [a]n inquiry into whether the evidence submitted in support of a visa petition is sufficient [to require a remand] would necessarily involve an in-depth examination into the merits of the [visa] petition. Such examination would, in our view, constitute a substantial and unwarranted intrusion into the district director's authority over the adjudication of visa petitions.

*Arthur,* 1992 WL 195807 at *4. Consequently, the BIA established the rule that it would "decline to grant motions to reopen for consideration of applications for adjustment of

---

**5.** Two circuits have upheld the constitutionality of this amendment, *see Azizi v. Thornburgh,* 908 F.2d 1130 (2d Cir.1990); *Anetekhai v. I.N.S.,* 876 F.2d 1218 (5th Cir.1989), and Mr. Rezai does not challenge the constitutionality of the two-year requirement itself.

status based upon unadjudicated visa petitions." *Id.*

The BIA applied the *Arthur* rule in denying Mr. Rezai's motion for remand, and he challenges the rule's constitutionality on First Amendment grounds. He claims that deporting him before his wife's visa petition is fully adjudicated infringes upon his right to familial association.[6]

The *Arthur* rule has been challenged unsuccessfully on other grounds. The Fifth Circuit held that the BIA's interpretation of the amendments was not unreasonable. *Pritchett,* 993 F.2d at 85. The Ninth Circuit was the first to address the constitutionality of the *Arthur* rule, rejecting a due process challenge to the BIA decision. *Dielmann v. I.N.S.,* 34 F.3d 851 (9th Cir.1994).[7] Mr. Rezai's First Amendment attack presents an issue of first impression.

In *Kleindienst v. Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), the Supreme Court upheld the discretionary decision of the Attorney General to deny a visa to a Belgian author on the basis of his Marxist writings. A group of United States citizens alleged that the INS decision violated their First Amendment rights to receive information and ideas. The Court held that

> when the Executive exercises this [exclusion] power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant.

408 U.S. at 770, 92 S.Ct. at 2585. Thus, we will not find that the *Arthur* rule violates Mr. Rezai's First Amendment rights as long as it is based on a "facially legitimate and bona fide reason." *Id.*

■ Applying this deferential standard of review, we hold that the *Arthur* rule passes constitutional muster. The BIA's decision not to reopen deportation proceedings on the basis of unadjudicated visa petitions was motivated by a desire to avoid usurping the district director's role in adjudicating those petitions. This is a legitimate and bona fide reason for the rule.

Furthermore, we note that if the district director had granted Ms. Wegner's visa petition, Mr. Rezai would not be facing deportation. His second marriage to a United States citizen could have affected and possibly still can impact his ability to remain in the United States, assuming a favorable outcome in Ms. Wegner's BIA appeal. The BIA's decision not to invade the province of the district director therefore does not deprive Mr. Rezai of a forum to advance his claims regarding his second marriage. It merely requires that the inquiry take place in the appropriate forum at the appropriate time. We hold that the BIA did not violate Mr. Rezai's First Amendment rights by refusing to reopen his deportation proceeding on the basis of an unadjudicated visa petition.

Relying upon *Blancada v. Turnage,* 891 F.2d 688 (9th Cir.1989), Mr. Rezai requests that we reopen his deportation proceedings or stay deportation pending the adjudication of his wife's visa petition. *Blancada* is easily distinguishable procedurally. *Blancada* was a habeas action, filed in the federal courts after the district director denied an alien's motion to reopen a deportation proceeding but before the BIA ruled on the motion to reopen pending before it. In that case, the alien challenged the constitutionality of the two-year requirement. Because the alien asserted a claim that raised a non-frivolous constitutional issue of first impression, the Ninth Circuit held that the federal habeas court should have entered a stay of deportation "pending the BIA's determination of [the] motion to reopen and in the event of an adverse ruling, pending the determination of any timely appeal to [the Ninth Circuit]." *Id.* at 691. *Blancada* merely requires that an alien be allowed to remain in the country

---

6. Mr. Rezai also claims that the BIA decision abridges his wife's First Amendment rights. His wife, however, is not a party to this action and he has no standing to assert this claim.

7. The Supreme Court has reviewed due process challenges to immigration laws under the same standards that it applies in First Amendment immigration cases. *See Fiallo v. Bell,* 430 U.S. 787, 795, 97 S.Ct. 1473, 1479, 52 L.Ed.2d 50 (1977).

long enough to litigate his non-frivolous yet novel constitutional claim. In the current case, the BIA has already denied Mr. Rezai's motion to reopen, and we have examined and rejected his constitutional claim on this appeal.

Because we conclude that the BIA's decisions denying asylum and withholding of deportation are supported by substantial evidence, we AFFIRM those decisions. We also hold that the BIA's application of the *Arthur* rule does not violate Mr. Rezai's First Amendment rights and AFFIRM the denial of his motion to reopen deportation proceedings.