85 F.3d 640
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Osama ATTAL, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 95-9514.
No. Aqm-kda-vzc.
 United States Court of Appeals, Tenth Circuit.
 March 4, 1996.
 
 Before ANDERSON, SETH, and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT[1]
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. Petitioner's motion for oral argument is therefore denied, and this case is ordered submitted without oral argument.
 
 
 2
 Petitioner Osama Attal, a Palestinian citizen of Jordan, seeks review of a decision of the Board of Immigration Appeals (Board) affirming an order of an immigration judge (IJ), denying his application for asylum and withholding of deportation pursuant to the Immigration and Nationality Act (the Act), 8 U.S.C. 1158(a) and 1253(h). Because substantial evidence supports the Board's decision, we affirm.
 
 
 3
 "An alien facing deportation who fears persecution if deported has two avenues of relief: asylum and withholding of deportation." Rezai v. INS, 62 F.3d 1286, 1288 (10th Cir.1995). The grant of asylum requires two steps. First, the alien must establish refugee status by "proving either past persecution or a 'well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' " Id. at 1289 (quoting 8 U.S.C. 1101(a)(42)(A)). The alien has the burden of proving that he is a refugee as defined by the statute. Hadjimehdigholi v. INS, 49 F.3d 642, 647 (10th Cir.1995). Once an alien establishes refugee status, the Attorney General has discretion to grant or deny asylum. Id. at 646. In this petition for review, we are concerned only with the first step.
 
 
 4
 "The 'well-founded fear of persecution' standard ... involves both a subjective 'fear' component, and an objective 'well-founded' component." Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir.1994). The alien has the burden of proving the objective "well-founded" component by "credible, direct, and specific evidence of facts that would support a reasonable fear that he faces persecution." Id.
 
 
 5
 The factual determination of whether an alien is a refugee will be upheld if it is supported by substantial evidence. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We may reverse a determination that an alien is not a refugee only if the evidence compels a conclusion that the alien has a well-founded fear of persecution. Id. at 481 n. 1, 483.
 
 
 6
 Attal, a Palestinian national citizen of Jordon, was born in Jordan after his family fled there from Israel in 1948. His father is deceased. His mother, five brothers, and three sisters continue to reside in Jordan where his brothers own and operate several businesses including restaurants, jewelry stores, hair salons, and a trading office. Attal attended school in Jordan and law school at the University of Damascus in Syria.
 
 
 7
 Upon his return to Jordan from Syria in 1985, Attal was detained and questioned at the border by the General Intelligence Department (GID), Jordan's secret police. Attal claims this interrogation was because his brother previously had been active in the Palestinian Liberation Organization (PLO). Attal claims that during the eight-hour interrogation by the GID, he was beaten and tortured in an attempt to elicit information from him regarding PLO activities in Syria and the nature of his brother's association with the PLO. He was subjected both to physical and verbal abuse. He eventually was released with instructions to pick up his passport in one month at GID headquarters in Amman.
 
 
 8
 Attal claims that when he attempted to retrieve his passport, he once again was detained, threatened, and questioned. He asserts he was forced to sign some papers which he characterized as a "confession" of PLO activity. Although he was allowed to leave, he did not receive his passport. One week later, he returned to GID headquarters and again requested return of his passport. He claims he was told that he could obtain his passport by cooperating as an informant on PLO activities in Syria and Jordan. Attal verbally agreed and received his passport. Attal did not return to Syria, but instead worked in his family businesses. He was not detained or questioned again.
 
 
 9
 Later in 1985, Attal and his brother were involved in an automobile accident with a Jordanian army vehicle. The police cited Attal and his brother as being at fault. Attal claims that they were verbally harassed for being Palestinian, and in retaliation, Attal shouted obscenities against the Jordanian government, an action which precipitated his arrest later that day. He was held for five days before his family secured his release, during which time he was not interrogated or abused. Although there is no evidence that Attal was formally charged, he claims he was told he was "scheduled" to appear before a military court and could face five to seven years in prison for his actions.
 
 
 10
 At his family's insistence Attal decided to leave the country. He was accepted by Findlay University in Ohio, and obtained a student visa to the United States. He was allowed to leave Jordan, but claims that the GID instructed him to report to them upon his return. Attal only remained at Findlay for one year, claiming he could not afford to continue. As a consequence, in 1989, the INS began deportation proceedings against him for violating his student visa.
 
 
 11
 Attal married Cheryl Fennell, a United States citizen, in December 1988, and lived with her until January, 1989. They later divorced, and Attal stated to INS officials that he married her in order to remain in the United States, and in fact, had paid her to marry him. In November 1989, a paternity suit resulted in the determination that Attal had fathered a child by his girlfriend, Cassie Campbell. They never married. Attal is currently married to another United States citizen, Eva Scripps-Attal, and they have two children. Eva has filed an immediate relative visa petition on his behalf which is still pending.
 
 
 12
 During deportation proceedings, Attal conceded deportability, but requested relief in the form of asylum or withholding of deportation. 8 U.S.C. 1158(a), 1253(h). In the alternative he requested voluntary departure pursuant to section 244(e) of the Act. 8 U.S.C. 1254(e).
 
 
 13
 Following a hearing, the IJ denied relief, determining that Attal failed to demonstrate a well-founded fear of persecution or a clear probability of persecution if he was returned to Jordan. The IJ denied his request for voluntary departure due to his admission that his first marriage was fraudulent. On appeal, the Board affirmed the IJ's decision, and this petition for review followed.
 
 
 14
 In affirming the IJ's decision, the Board agreed that although the treatment Attal received at the hands of the GID upon his return from Syria amounted to persecution, it was not on account of one of the factors enumerated in the Act. See 8 U.S.C. 1101(a)(42)(A). The Board concluded, however, that it need not decide this issue because Attal failed to present evidence of the likelihood of future persecution, and the past persecution was not severe enough to warrant a grant of asylum on humanitarian grounds. See Matter of Chen, Interim Dec. No. 3104 (Bd. Immigration App.1989); see also Baka v. INS, 963 F.2d 1376, 1379 (10th Cir.1992)(holding that to establish eligibility for asylum based on past persecution when there is no reasonable likelihood of future persecution, "an alien must show past persecution so severe that repatriation would be inhumane").
 
 
 15
 Attal, in his petition for review, repeatedly asserts that the Board ignored evidence that he was persecuted because he is Palestinian and because of political opinions imputed to him. There is no evidence in the record, however, to demonstrate that the conduct of either the GID or the Jordanian police toward Attal was on account of his Palestinian heritage, or any actual or imputed political opinions or affiliations of Attal.[2] Instead, it appears that the actions of the GID were motivated by a desire to gain Attal's cooperation in obtaining information regarding the PLO activities of Attal's brother and others in Syria. The fact that Attal may have been punished for resisting recruitment is not evidence of persecution on account of one of the grounds enumerated in the Act. See Elias-Zacarias, 502 U.S. at 482-83.
 
 
 16
 The Board gave substantial weight to an advisory opinion letter from the Department of State, Bureau of Human Rights and Humanitarian Affairs, which states that Palestinians are not a persecuted group in Jordan. Admin. R. at 259-60. The Board noted that Attal had failed to present evidence refuting this opinion. Even assuming the political climate in Jordan may lead to Palestinians being accused of political opinions they do not hold, Attal did not present evidence that he was a victim of this practice prior to leaving Jordon, or that he would again be a victim of this practice in the event of his return. Palestinians may not be a favored group in Jordon, but the treatment Attal claims they receive is comprised more of "restrictions or threats" than "the offensive infliction of suffering or harm" necessary to rise to the level of persecution. Hadjimehdigholi, 49 F.3d at 646 (further citation omitted).
 
 
 17
 Attal repeatedly argues that the Board based its decision on his failure to flee the country after his detention at the Syrian border. He asserts that the Board expected him to do this without his passport. This is a misrepresentation of the Board's statements. The Board stated that Attal remained in Jordon following the border incident, but did not state that it was basing its decision on his failure to flee the country without his passport. Admin. R. at 6.
 
 
 18
 Attal asserts that he is facing a possible prison term for his diatribe against the Jordanian government at the time of the vehicle accident. During Attal's five-day detention following the accident, however, he was neither interrogated nor abused. Therefore, even if we assume that Attal faces some form of civil or criminal charge upon his return to Jordan, there is no evidence that the pending charges are for the purpose of persecution instead of for the legitimate purpose of prosecution. See Kapcia v. INS, 944 F.2d 702, 708 (10th Cir.1991)(holding that prosecution is a legitimate government act, and not persecution as defined by the Act). Attal had the burden of proving that, upon his repatriation, the Jordanian government would seek him out for purposes of persecution rather than for legal criminal prosecution. See Sadeghi, 40 F.3d at 1142. Attal's evidence does not so prove.
 
 
 19
 Attal claims a "history" of detention, interrogation, and torture, and that he was "repeatedly" detained, interrogated, and tortured. Petitioner's Br. at 3, 12. These sweeping statements are not supported by the record. Although Attal's treatment by the GID during his attempts to obtain return of his passport may have contained threats and harassment, he only recounts one incident, the one at the Syrian border, of "detention, interrogation, and torture." One incident does not comprise a history of such treatment.
 
 
 20
 Attal claims that the Board ignored evidence that the Jordanian government desires to eliminate all PLO activity. He believes that this condition, assumed to be true, constitutes evidence that he faces persecution if repatriated. By his own admission, however, Attal claims that he is not now, or ever has been, associated with the PLO or involved in any PLO activities.
 
 
 21
 Although Attal may have been mistreated by the Jordanian government upon his return from Syria in an effort to obtain information, his life was never threatened. Once his passport was returned, he remained in Jordon without harassment. He was allowed to work, to move about the country freely, and to leave the country when he desired to do so. Although Attal claims he has no knowledge of the status of his PLO brother, he presented no evidence that other members of his family have been harassed or persecuted either before or after his departure from Jordan.
 
 
 22
 Attal also claims that because he was persecuted in the past, "the INS was obligated to come up with some evidence as to why [he] did not have a well-founded fear of persecution in the future." Petitioner's Reply Br. at 7. He does not point us to authority supporting his contention that the burden of proof shifts to the INS. The burden of proving a well-founded fear of future persecution by "credible, direct, and specific evidence of facts" remains with the alien. Sadeghi, 40 F.3d at 1142.
 
 
 23
 Substantial evidence supports the Board's decision that Attal does not have a well-founded fear of future persecution, or that Attal's past treatment was so severe that return to Jordan would be inhumane. See Baka, 963 F.2d at 1379. Therefore, our review of this record does not compel the conclusion that Attal holds a well-founded fear of persecution based on any of the grounds listed in the Act, a standard which much be met before we may reverse. See Elias-Zacarias, 502 U.S. at 481.
 
 
 24
 Because we conclude that Attal did not meet his burden of establishing refugee status, a prerequisite for asylum eligibility, we need not address whether the Board's denial of asylum constituted an abuse of discretion. See Rezai, 62 F.3d at 1289. Also, because Attal failed to meet the less stringent standard for establishing eligibility for asylum, it is clear he cannot meet the more exacting standard required for withholding of deportation. See Nguyen v. INS, 991 F.2d 621, 626 (10th Cir.1993).
 
 
 25
 The order of the Board of Immigration Appeals is AFFIRMED. Attal's Motion to Abate is DENIED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 In his opening brief, Attal claims that his persecution in Jordon was on account of his "Palestinian nationality." and because of his political opinions. Petitioner's Br. at 4. In his reply brief, he states that he never claimed that his persecution was on account of his Palestinian nationality, but instead was due to unpopular political opinions "imputed" to him. Petitioner's Reply Br. at 8 n. 3, 11-12.9