**F I L E D**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

HASAN N. NASER,

     Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

    Respondent.

No. 96-9529
(Petition for Review)
(INS No. A73 430 969)

ORDER AND JUDGMENT[*]

Before BRORBY, BARRETT, and MURPHY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Hasan N. Naser petitions for review of a final order of deportation issued by the Board of Immigration Appeals. We have jurisdiction under 8 U.S.C. § 1105a(a),[1] and affirm.

Petitioner was born in Israel, but holds a Jordanian passport and lived in Jordan for several years before coming to the United States. He entered New York legally on October 28, 1990, and obtained authorization to stay until October 27, 1991. On October 25, 1994, petitioner was arrested for using counterfeit credit cards to steal money from ATMs. He was charged with conspiracy to commit offenses against the United States involving the production,

---

[1] The Board of Immigration Appeals issued its final order of deportation on July 17, 1996. Petitioner filed his petition for review on August 20, 1996. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, which alters the availability, scope, and nature of judicial review in immigration cases, was enacted on September 30, 1996. Because petitioner's deportation proceedings commenced before April 1, 1997, and the final decision of the Immigration and Naturalization Service issued before October 1, 1996, however, neither IIRIRA's permanent "new rules," nor its interim "transitional rules" apply to this case. See id. §§ 306(c)(1), 309(a), (c)(1) & (4), as amended Pub. L. No. 104-302, § 2, 110 Stat. 3657, set out in notes to 8 U.S.C. §§ 1101, 1252. We therefore apply pre-IIRIRA standards.

In contrast, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, apply to petitions for review, like this one, pending on or after its enactment date, April 24, 1996. See Fernandez v. INS, 113 F.3d 1151 (10th Cir. 1997). Because petitioner was found deportable for overstaying his visa and not for criminal activity specified in 8 U.S.C. § 1105a(a)(10), however, AEDPA does not bar judicial review in this case. See § 440 of AEDPA, 8 U.S.C. § 1105a(a)(10) (repealed by IIRIRA, Pub. L. No. 104-208, § 306(b), 110 Stat. 3009 (Sept. 30, 1996), and replaced by 8 U.S.C. § 1252).

use, and possession of counterfeit access devices, in violation of 18 U.S.C. §§ 371 and 1029. He pled guilty to this charge on June 8, 1995. On the same date, petitioner was charged by the Immigration and Naturalization Service with being deportable to Jordan based on overstaying his visa. See 8 U.S.C. § 1251(a)(1)(B).

Petitioner conceded deportability but requested asylum and withholding of deportation based on his alleged fear of persecution because of his political opinion if he returns to Jordan. He claimed he was a leader of student anti-government demonstrations in the 1969-70 academic year. He said he was falsely accused in 1970 of being an Israeli agent and was arrested, tortured, and beaten. He claimed he escaped from custody and the country a few months after his arrest but, as a result, was convicted and sentenced to death in absentia.

Petitioner said he returned to Jordan in the summer of 1983, after the King pardoned all political prisoners. He testified that his death sentence was pardoned. He claimed he was arrested when he entered the country, however, and sentenced to a lengthy period of intensely supervised probation which prevented him from working. Petitioner claimed variously that his sentence of probation was six or seven years. He said that after five years on probation, he bribed an official to issue him a passport and he again left the country. Petitioner also testified that he left Jordan the second time in late 1990, and came directly to the

United States.  See Admin. R. at 75-76.  Thus, petitioner lived in Jordan a full seven years before he came to the United States.

Petitioner stated that he did not apply for asylum immediately upon entering the United States because he did not know English very well, was unfamiliar with the procedure for applying for political asylum, and because some people he met told him he did not really need it.  He asserts that he will be tortured and perhaps executed if he returns to Jordan, because he left the country without permission.  He testified that the passport he traveled with was valid and genuine, however.  See id. at 97.

The immigration judge noted some conflicts in petitioner's evidence.  For example, petitioner claimed he was pardoned in 1983 by the King of Jordan, but maintained that his death sentence was reinstated after he left Jordan again in 1990.  Petitioner stated he left Jordan before his probationary period was completed, even though he lived in Jordan a full seven years before he left.  He claimed he left the country without permission even though his passport was valid and genuine.  The immigration judge resolved these conflicts, concluding that petitioner's death sentence was vacated when he was pardoned by the King in 1983; that petitioner completed his probationary period before leaving Jordan in 1990; and that petitioner's departure was sanctioned, since he traveled with a valid passport.  The immigration judge also noted that petitioner's claim of past

and future anticipated persecution was wholly unsupported by any documentation predating his arrest in the United States, and that he waited five years after arriving in the United States to apply for asylum. The immigration judge concluded that petitioner had not shown past persecution or a reasonable possibility of future persecution if he returns to Jordan, and had therefore not established refugee status to support his application for asylum or withholding of deportation. The Board of Immigration Appeals affirmed.

To obtain a grant of asylum, an alien must first "establish that he is a refugee by proving either past persecution or a 'well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Rezai v. INS, 62 F.3d 1286, 1289 (10th Cir. 1995) (quoting 8 U.S.C. § 1101(a)(42)(A)). If an alien qualifies as a refugee, the Attorney General may exercise her discretion to grant him asylum. See id.

We review the Board's decision that petitioner did not qualify as a refugee for substantial evidence. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Reversal is appropriate "only if the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id. at 481 & n.1. The petitioner bears the burden of establishing his eligibility for asylum. See Rezai, 62 F.3d at 1289.

Under this deferential standard, it is clear that the Board of Immigration Appeals did not err when it affirmed the immigration judge's rejection of petitioner's claim for asylum. The immigration judge's conclusions were supported by substantial evidence.

Withholding of deportation presents a "tougher standard" than asylum. <u>Id.</u> (quotation omitted). To establish his eligibility for withholding of deportation, an alien "must prove a 'clear probability of persecution' upon deportation." <u>Id.</u> (quoting <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 430 (1987)). Because we affirm the Board's decision that petitioner did not meet the less arduous standard for asylum, we also affirm its decision that he did not establish his eligibility for withholding of deportation. <u>See</u> <u>id.</u>

AFFIRMED.

Entered for the Court


Wade Brorby
Circuit Judge