F I L E D
United States Court of Appeals
Tenth Circuit

SEP 3 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

AMIN MALOUKH,

        Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

        Respondent.

No. 96-9524
(Petition for Review)
(No. A28-542-882)

ORDER AND JUDGMENT*

Before ANDERSON, LOGAN, and EBEL, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner seeks review of a final order of the Immigration and Naturalization Service (INS) denying his application for asylum or withholding of deportation.[1]  The Board of Immigration Appeals (BIA) concluded he had not shown the requisite "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" status), and denied relief accordingly, see Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir. 1994) (failure to satisfy definition of refugee precludes asylum and, a fortiori, withholding of deportation).  The BIA upheld the decision of the Immigration Judge (IJ), who had found petitioner's evidence insufficient to establish either past or feared future persecution on account of political opinion or religion.  We have jurisdiction pursuant to 8 U.S.C. § 1105a(a) and 28 U.S.C. § 158, and we affirm.

---

[1]     The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, alters the availability, scope, and nature of judicial review in INS cases.  Because petitioner's deportation proceedings commenced before April 1, 1997, and the final decision of the INS issued before October 31, 1996, neither IIRIRA's permanent "new rules," nor its interim "transitional rules," apply to this case.  See id. §§ 306(c)(1), 309(a), (c)(1) & (4), as amended Pub. L. No. 104-302, § 2, 110 Stat. 3657, set out in notes to 8 U.S.C. §§ 1101, 1252.  In contrast, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, apply to INS cases commenced, like this one, before AEDPA's enactment on April 24, 1996, see Fernandez v. INS, 113 F.3d 1151 (10th Cir. 1997), but none of these provisions appear pertinent to this petition for review, which does not involve deportation for criminal activity.

Petitioner is a Palestinian who lived in Israel until he entered the United States on a student visa. Due to family financial difficulties, he stopped attending school and instead obtained unauthorized employment. In January 1995, he pled guilty to using a false social security number in violation of 42 U.S.C. § 408(a)(7)(B) and making false statements in violation of 18 U.S.C. § 1001. Both charges arose because petitioner obtained unauthorized employment. Thereafter, deportation proceedings were commenced against him for failing to maintain nonimmigrant student status. Petitioner conceded deportability, but applied for asylum or withholding of deportation. He alleged, among other things, past persecution and a well-founded fear of future persecution by Hamas, a Palestinian terrorist group.

The IJ held a hearing on the application for asylum or withholding of deportation, and the parties presented the following evidence. In 1990, petitioner began attending Hebrew University in Jerusalem. While there, he became affiliated with a group called "two states for two people." This group espoused views contrary to those of Hamas. As a result of interacting with this group, he began to oppose Hamas' use of violence and terrorism. See R. at 132-33. Petitioner stated that, while in school, he tried to encourage people to reject Hamas and he criticized Hamas' use of terrorism. See id. at 133. In 1991, Hamas members spray painted petitioner's home and warned him to stop speaking against

Islam and to drop out of school.  See id.  Members of the "two states for two people" group visited petitioner at his home.  Hamas believed they were undercover police and threatened petitioner's life if he continued to attend Hebrew University.  See id. at 49, 134.  Subsequently, seven men kidnapped him in the middle of the night, took him to the mountains, beat him, and accused him of collaborating with the Israeli authorities by reporting the names of two Hamas members to the Israelis.  See id. at 67, 133-34.  Petitioner testified the men directed him to quit school or face hanging on an "electric collar" for collaborating with the Israelis.  See id. at 134.  Petitioner stated that he tried to convince them that he was not a collaborator and that they were entitled to their own beliefs.  See id. ("I tried to convince them I'm not a collaborator, that my, what I believe is wrong and what maybe you believe is correct but let me have what I believe and I will keep what you believe . . . .").  Petitioner was able to escape from them, although as he was doing so, he was shot in the hip.  See id. at 134-35.  He testified he escaped because he knew collaborators are killed.  See id. Thereafter, petitioner stopped attending Hebrew University and obtained a job with the help of his Palestinian cousin, who was in the Israeli secret service.  See id. at 135-36.  In August 1992, with a Jordanian travel document, he entered the United States on a nonimmigrant student visa.

In November 1992, Hamas fire bombed his family's store leaving a message that spies deserve to be burned. See id. at 75, 95, 97, 145-46. A letter from petitioner's sister indicated the bombing occurred because Hamas suspected he had reported names of its members to Israeli authorities to obtain an exit visa. See id. at 97.

In January 1994, another cousin of petitioner, who lived in California and who had returned from a trip to Israel, informed petitioner that his mother said he should not return to Israel because he is wanted by Hamas and because his family was repudiating him for his religious conversion from Islam to Christianity. See id. at 68, 92, 95, 97. His mother indicated to him in a phone call in January 1994 that Hamas was still looking for him. See id. at 148. Petitioner stated that he feared persecution and even death from Hamas due to his religious conversion, which occurred in January or February of 1995. See id. at 48, 138-39.

Contrary to his assertions to the men who kidnapped and beat him, petitioner admitted, before the IJ, that he collaborated with the Israelis. See id. at 133. He did so to obtain a work application and a change of address in Israel. See id. at 77, 96. He testified that Hamas thought he collaborated with Israeli authorities to obtain permission to attend Hebrew University, see id. at 129-30, and his sister, in a letter, stated Hamas also believed he collaborated to obtain an exit visa, see id. at 97.

Based on this evidence, the IJ determined petitioner did not have a past or a well-founded fear of persecution based on his political opinion or religion. See id. at 106-07. On appeal, the BIA concluded petitioner did not have a past or a well-founded fear of persecution because Hamas targeted petitioner due to his collaboration activities, not due to any political opinion. See id. at 8-9. The BIA further determined that petitioner failed to show that neither the Israeli government nor the Palestinian Authority were unable or unwilling to protect him from Hamas. See id. at 9-10. The BIA gave little weight to petitioner's claim of religious persecution, considering it to be suspect since his conversion from Islam to Christianity did not occur until after deportation proceedings had commenced and he was convicted of two fraud offenses. See id. at 10. Also, the BIA found that petitioner failed to provide any evidence regarding persecution of religious converts. See id.

"An alien facing deportation who fears persecution if deported has two avenues of relief: asylum and withholding of deportation." Rezai v. INS, 62 F.3d 1286, 1288 (10th Cir. 1995). The grant of asylum requires first that the alien establish refugee status "by proving either past persecution or a 'well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Id. at 1289 (quoting 8 U.S.C. § 1101(a)(42)(A)). If the alien establishes refugee status, the Attorney General

has discretion to grant or deny asylum.  See Nazaraghaie v. INS, 102 F.3d 460, 462 (10th Cir. 1996).  Because the BIA determined petitioner did not prove he is a refugee, we are concerned here with the first step.  See Hadjimehdigholi v. INS, 49 F.3d 642, 646 (10th Cir. 1995).

Petitioner claims refugee status for past persecution and a well-founded fear of persecution.  He bears the burden of proving that he is a refugee.  See id. at 647; see also Rezai, 62 F.3d at 1289 ("alien must present specific, credible evidence to support his claim that he has been persecuted or will be persecuted if deported").

"To prove past persecution, an asylum applicant must present specific facts through objective evidence."  Nazaraghaie, 102 F.3d at 462 (quotation omitted).  "If the applicant meets this burden, a well-founded fear of persecution is presumed; the presumption is rebutted if a preponderance of the evidence indicates that since the time the persecution occurred, country conditions have changed such that the applicant's fear is no longer well-founded."  Id. (citing 8 C.F.R. § 208.13(b)(1)(i)).

"The 'well-founded fear of persecution' standard . . . involves both a subjective 'fear' component, and an objective 'well-founded' component."  Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir. 1994).  The alien must prove the objective component by "credible, direct, and specific evidence of facts that

-7-

would support a reasonable fear that he faces persecution." Id.  A one in ten possibility of persecution may constitute a reasonable possibility.  See Nazaraghaie, 102 F.3d at 462 (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987)).  "Persecution has been defined as the offensive infliction of suffering or harm and encompasses more than just restrictions or threats to life and liberty." Hadjimehdigholi, 49 F.3d at 646 (quotation omitted).  The subjective component, which is not relevant until the objective component is proven, requires that the alien's fear be genuine.  See Kapcia v. INS, 944 F.2d 702, 706 (10th Cir. 1991).

The BIA's determination that an alien is not a refugee will be upheld if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).  We will reverse the BIA's decision only if the evidence compels a conclusion that the alien has proven refugee status.  See id. at 481 n.1, 483-84.

Petitioner first argues on appeal that the BIA erred in determining he was not persecuted on account of one of the protected grounds.  He believes that persecution for collaboration and persecution on account of one of the five statutorily protected grounds are not mutually exclusive and, instead, there can be multiple motives for persecution.  Because petitioner was warned not to speak against Islam or Hamas, and he disagreed with Hamas' political philosophy,

-8-

petitioner believes he showed political and religious persecution. Also, petitioner contends that collaboration is inherently political.

The relevant inquiry is "whether the persecution an alien fears is on account of his political opinion [or religion] or . . . on account of his actions . . . ." Adhiyappa v. INS, 58 F.3d 261, 266 (6th Cir. 1995) (citing Elias-Zacarias, 502 U.S. 478). "The statute provides protection only where the past or anticipated persecution is on account of political opinion, regardless of whether the persecuted acts on that opinion . . . ." Id. at 268. Persecution on account of political opinion means persecution on account of the victim's, not the persecutor's, political opinion. See Elias-Zacarias, 502 U.S. at 482.

As the BIA stated, the record indicates that members of Hamas harassed petitioner to protect Hamas because they believed he informed Israeli authorities about its members, not due to any political opinions or religious beliefs petitioner held. Retaliation for being a collaborator is not one of the listed statutory grounds for refugee status. Cf. Adhiyappa, 58 F.3d at 268 (list does not include individuals persecuted because their actions tend to obstruct activity of politically-motivated groups). The record shows petitioner collaborated for his own personal benefit. Cf. id. at 267 (person might inform government official of names of members of terrorist group for reasons other than political opinion).

Although petitioner states he spoke against Hamas to friends and family, see R. at 49, the record does not indicate that petitioner was involved in any political activities. The threats he received almost exclusively refer to his attendance at Hebrew University and his collaboration with Israeli authorities. Furthermore, the State Department Report states that Palestinians are killing other Palestinians for collaborating with Israelis. See R. at 199-200, 202. Petitioner did not present evidence that Hamas was persecuting Palestinians or students who were not collaborators. See Adhiyappa, 58 F.3d at 268. The record does not indicate petitioner collaborated even in part based on his political opinions or religion.

Thus, we conclude there is substantial evidence[2] to support the BIA's decision that petitioner was threatened by Hamas for his collaboration activities and not based on the statutory categories of political opinion or religion. See id.; see also Elias-Zacarias, 502 U.S. at 483 (petitioner must establish persecution

---

[2] The deferential substantial evidence standard makes sense where, as here, the determination hinges on the motivations of the persecutors, who are not before the court, as illuminated by the motivations of the alien. Motivations are easily subject to reinterpretation and characterization upon recollection, and professions that a certain opinion motivated conduct are difficult to refute. Because the credibility of the asylum seeker is critically important, deference to the Board's determination is appropriate.

See Adhiyappa, 58 F.3d at 267-68.

because of political opinion, not because of refusal to join guerrillas); Bartesaghi-Lay v. INS, 9 F.3d 819, 823 (10th Cir. 1993) (affirming BIA's finding of no refugee status because possible persecution was based on petitioner's refusal to participate in drug smuggling, not political opinion); Adhiyappa, 58 F.3d at 267-68 (no persecution based on political opinion where petitioner informed government of terrorist group members presumably to improve job situation and avoid government retribution). Our review of the record therefore does not compel the conclusion that petitioner has a past or a well-founded fear of persecution based on religious or political persecution by Hamas. See Elias-Zacarias, 502 U.S. at 481.

Petitioner argues that the BIA's determination that he did not prove that Hamas is a group the Israeli government or Palestinian Authority cannot control was made in violation of his due process rights and that the evidence shows, on the contrary, that Hamas is such a group. These arguments, however, are only relevant after an alien shows persecution based on political opinion or religion. See Bartesaghi-Lay, 9 F.3d at 822 (alien may establish eligibility for asylum if he establishes persecution "from a non-government agency which the government is unwilling or unable to control"); Rodriguez-Rivera v. United States Dep't of Immigration & Naturalization, 848 F.2d 998, 1005-06 (9th Cir. 1988) (addressing only whether alien established well-founded fear of persecution from

non-government entity, and, because alien failed to do so, not reaching issue of control). Because petitioner did not show such persecution, we need not address this argument.

Petitioner contends that if he was not persecuted on account of his religious and political views, he was persecuted for belonging to a social group of collaborators. In his application for asylum or withholding of deportation, petitioner checked the box indicating he was persecuted for being a member of a social group. See R. at 64. In his brief before the BIA, however, petitioner argued only political opinion and religious persecution. See id. at 16. Because a petitioner must exhaust administrative remedies, see 8 U.S.C. § 1105a(c), a jurisdictional requirement, and may not raise an issue for the first time on judicial review, petitioner waived his right to be heard on this claim. See Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992). Accordingly, we lack jurisdiction to consider any claim alleging persecution based on membership in a social group. See Rivera-Zurita v. INS, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (failing to raise issue on appeal to Board is failure to exhaust administrative remedies and appellate court lacks jurisdiction to hear matter).

Petitioner's fear of future religious persecution due to his conversion to Christianity is not well-founded. The BIA determined that petitioner's conversion was not sincere. We do not evaluate a witness's credibility. See Kapcia,

944 F.2d at 707. Furthermore, no evidence supported petitioner's personal fear that Hamas would persecute him for this reason. The State Department Report did not indicate that Hamas was persecuting Palestinians who converted to Christianity. Because the mere assertion of affiliation with a religion is insufficient to establish persecution on that ground, see Refahiyat v. INS, 29 F.3d 553, 557 (10th Cir. 1994), petitioner has not met his burden of proving a well-founded fear of religious persecution.

We conclude petitioner did not meet the standard for establishing eligibility for asylum. In failing to do so, he also cannot meet the more rigorous standard for withholding of deportation. See Castaneda, 23 F.3d at 1578.

The decision of the Board of Immigration Appeals is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge