F I L E D
United States Court of Appeals
Tenth Circuit

AUG 30 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RAY YOHANNES FESSEHA,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE;
JANET RENO, Attorney General of
the United States,

Respondents.

No. 98-9537
(BIA No. A74-276-407)
(Petition for Review)

ORDER AND JUDGMENT *

Before **PORFILIO** , **BARRETT** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this petition for review. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Ray Yohannes Fesseha filed this petition for review of the decision of the Immigration and Naturalization Service (INS) that he is not eligible for political asylum or withholding of deportation. Following review of the administrative record and consideration of the parties' arguments, we conclude that the INS was correct and deny review.

Petitioner arrived in the United States on July 30, 1990, as a nonimmigrant visitor for pleasure. He obtained a nonimmigrant student visa on February 22, 1991. On September 25, 1995, the INS served petitioner with an order to show cause as to why he should not be deported for failing to comply with the requirements of his student visa. Petitioner conceded deportability, but sought asylum, withholding of deportation, and voluntary departure. Following an evidentiary hearing, the immigration judge (IJ) denied petitioner's application for asylum and withholding of deportation, but granted his request for voluntary departure. On August 31, 1998, the Board of Immigration Appeals (BIA) dismissed petitioner's appeal of the IJ's decision. [1]

---

[1]     8 U.S.C. § 1105a was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, Div. C. Title III, § 306(b), 110 Stat. 3009. IIRIRA alters the availability, scope, and nature of judicial review in INS cases. The repeal of § 1105a is not effective in

(continued...)

The Attorney General has discretion to grant asylum to an otherwise deportable alien who qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). In order to qualify for a grant of asylum, an alien must first establish that he is eligible for refugee status. *See Kapcia v. INS*, 944 F.2d 702, 706 (10th Cir. 1991). If the alien establishes his status as a refugee, the Attorney General must then exercise her discretion to grant or deny asylum. *See id.* at 708.

In order to establish refugee status, an alien must present specific facts establishing either that he previously was persecuted in his native country or that he has a genuine and reasonable fear of being persecuted if he returns there. *See id.* at 707. The persecution the alien experienced or fears must be "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). If the alien succeeds in establishing that he was the victim of past persecution, a presumption of genuine and reasonable fear of future persecution arises which the INS can rebut only by showing that conditions within the country have changed, and therefore, the alien's fear is no longer reasonable. *See Nazaraghaie v. INS*, 102 F.3d 460, 462 (10th Cir. 1996).

---

[1](...continued)
this case. *See id.* § 1101 Effective dates. Pub.L. No. 104-208, Div. C, § 309 (petitioner's deportation proceedings commenced before April 1, 1997, and the agency's final order was filed more than thirty days after IIRIRA's date of enactment). Thus, the transitional rules apply to this case.

To be eligible for withholding of deportation, an applicant must satisfy a higher standard than that for asylum. "[T]he alien must demonstrate a clear probability of persecution with objective evidence that it is more likely than not that . . . [the alien] will be subject to persecution upon deportation." *Baka v. INS*, 963 F.2d 1376, 1380 (10th Cir. 1992) (quotations omitted). Because the asylum standard is more lenient than that applied to withholding of deportation, we will first consider whether the BIA erred in denying petitioner asylum.

Petitioner asserts that he fears returning to Ethiopia because of his relationship to former officials of the Dergue government, his membership in the Amhara tribe, his prior status as a member of the privileged class, and his association with President Mengistu Haile Mariam's son. Petitioner asserts that his parents were high ranking officials in the Dergue government led by Mengistu. According to petitioner, his family enjoyed wealth and privilege, and he attended private school with Mengistu's son. When petitioner was fourteen years old, and it appeared that the Dergue government would topple, petitioner's parents sent him to an uncle in the United States. Petitioner asserts that his parents disappeared before they could leave the country and have never been heard from again. He asserts that members of the former Dergue government have been arrested, persecuted, and killed by the current Ethiopian government. Petitioner's family believes this is the fate of his parents, and he believes that, as

-4-

the child of former officials of the Dergue government, he would face the same if he returned to Ethiopia. Moreover, he asserts that the new government's vengeance has spread to members of the Amhara ethnic group which comprised a majority of the Dergue government.

In denying petitioner's application, the IJ concluded that petitioner failed to meet his burden of proof by failing to provide any evidence of his parents' position in the Mengistu government, or evidence that the current Ethiopian government is persecuting families of former officials of the Mengistu government. The BIA agreed that petitioner had not presented any evidence which would indicate a pattern or practice of persecution against former members of the Mengistu regime. Moreover, the BIA determined that even if petitioner had been the victim of past persecution, the evidence established that conditions in Ethiopia had changed, thus rebutting the presumption that petitioner would be persecuted upon his return.

Because the BIA reviews the IJ's order de novo, we review only the decision of the BIA and not that of the IJ. *See Luna-Rodriguez v. INS*, 104 F.3d 313, 315 (10th Cir. 1997). We review the BIA's decision on issues of law de novo, and its factual findings for substantial evidence. *See Refahiyat v. INS*, 29 F.3d 553, 556 (10th Cir. 1994). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to

the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, "[e]ven if we disagree with the [BIA's] conclusions, we will not reverse if they are supported by substantial evidence and are substantially reasonable." *Kapcia*, 944 F.2d at 707.

First, petitioner alleges that the BIA failed to consider his argument that he would be subjected to future persecution based upon imputed political opinion. The INS asserts that petitioner failed to raise the claim of persecution because of imputed political opinion before the BIA, and therefore this court should not consider it. *See Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (holding that this court does not have jurisdiction to consider an unexhausted claim). Petitioner asserted, and the BIA considered, his argument that he would be subjected to persecution as a family member of former officials in the Mengistu regime. Although not as clear an argument of imputed political opinion as may be desired by the INS, this argument surely suffices to raise the issue of whether petitioner, as the son of allegedly high ranking officials in the Mengistu government, would be subjected to persecution due to imputed political opinion if he returned to Ethiopia.

We need not address the issue of imputed political opinion as the basis for refugee status, however, because our review of the record does not reveal any evidence that petitioner has done or said anything that would cause the current Ethiopian government to impute his parents' political views to him. Petitioner

-6-

does not claim that he harbored any firm political beliefs when he left Ethiopia at age fourteen, nor has he joined or supported any political groups or causes since that time. Moreover, he did not present any supporting evidence of his claim that family members of Mengistu government officials were being mistreated by the present regime.

Contrary to petitioner's assertion, the BIA considered the information submitted regarding the political situation currently existing in Ethiopia. The BIA considered the 1995 United States Department of State Country Report on Human Rights which indicated that former members of the Mengistu regime remained in detention awaiting trial for crimes committed during the "red terror." Cert. Admin. R. at 3. While acknowledging that serious problems still exist in the country, the BIA concluded that nothing in this report or any of the other background evidence submitted by petitioner, indicated that family members of former government officials were being detained or persecuted due solely to their familial relationships. *See Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997) ("Even attacks on family members, absent a pattern of persecution tied to the applicant, do not establish a well-founded fear of persecution; nor do isolated acts of violence."). The BIA also rejected petitioner's claim that the government would be negatively interested in his childhood friendship with Mengistu's son.

Petitioner's claim that he fears persecution due to his membership in the Amhara tribe also is unavailing. Petitioner admitted to the IJ that although the majority of officials in the Mengistu government were Amharic, and there is evidence that these officials may have been persecuted after the change in regime, there was no evidence that persecution would come about simply due to membership in the Amhara tribe. *See* Cert. Admin. R. at 78-79. The INS argues, and we agree, that petitioner failed to show an "organized or systematic or pervasive persecution" of Amharas by the current Ethiopian government. *Feleke*, 118 F.3d at 598. [2]

Next, petitioner asserts that the BIA erred in requiring him to provide evidence that other members of his family have been persecuted because of their relationship to his parents. The BIA held that, even assuming that petitioner's parents were arrested because of their role in the Mengistu government, petitioner did not establish that his parents were arrested in order to vicariously harm petitioner. The petitioner contends that this holding inappropriately requires him to show that other family members were persecuted. We do not agree with

---

[2]     Petitioner argues that the BIA erred in not considering his claim of persecution due to his Amhara heritage. We note, however, that we need not analyze the processes of the BIA as long as the ultimate decision is supported by substantial evidence. *See Rezai v. INS*, 62 F.3d 1286, 1289 (10th Cir. 1995). Here, the BIA denial of asylum relief was amply supported, and in light of this and petitioner's admission before the IJ, we determine any error in omission to be harmless. *See Nazaraghaie*, 102 F.3d at 456.

petitioner's interpretation of the BIA's statement. This statement was made in the context of rejecting petitioner's claim that the arrest of his parents constituted an act of past persecution of petitioner. Therefore, we determine petitioner's argument to be without merit.

Next, petitioner alleges that the BIA erred in concluding that, even if it were to find that the disappearance of petitioner's parents was sufficient to establish he was the victim of past persecution, the conditions in Ethiopia had changed and therefore, petitioner no longer had a well-founded fear of persecution upon his return to Ethiopia. We conclude that, because petitioner failed to establish that he had been the victim of past persecution, the BIA was under no obligation to show a change of conditions, and we need not address this claim of error. *See Nazaraghaie*, 102 F.3d at 462.

Finally, petitioner argues that neither the IJ nor the BIA made an express finding that his testimony, and that of his uncle, was incredible, and therefore, both erroneously rejected his application for lack of corroboratory evidence. Petitioner asserts that this placed a burden on him that was not sanctioned by statute. We accord great weight to credibility determinations by the IJ and the BIA provided the determination is supported by "specific, cogent reason[s]" *Figeroa v. INS*, 886 F.2d 76, 78-79 (4th Cir. 1989) (quotations omitted). Although the IJ did not make a specific finding of incredibility, he expressed a number of

reasons to doubt the testimony of both petitioner and his uncle. He found the testimony was "vague" with "discrepancies as to how the parents disappeared." Cert. Admin. R. at 54. He also pointed to discrepancies in the testimony as to the occupations of petitioner's parents and exactly what positions the parents held in the Mengistu government. The IJ noted that if the parents were in the kind of influential positions with the former government that petitioner alleged, there should be some evidence of their whereabouts or fate. Moreover, the IJ questioned testimony regarding petitioner's sister, living in Germany, petitioner's lack of contact with her, and the absence of any evidence of her opinion of the situation. Therefore, in essence, the IJ found the testimony of the two witnesses to be incredible. *See Rezai*, 62 F.3d at 1289 (holding that inconsistencies can support a finding of incredibility). The BIA noted the IJ's findings of incredibility, but based its decision on a determination that even if the petitioner's testimony had been credible, he had not proved his entitlement to asylum or withholding of deportation.

A petitioner's uncorroborated testimony has been held sufficient if it is credible, persuasive, and specific. *See Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir. 1985). When, as here, these factors are absent, the facts must be supported by specific evidence. *See Refahiyat*, 29 F.3d at 556. In light of the inconsistencies in the testimony before the IJ, we agree with the BIA that some

corroborative evidence was necessary to sustain petitioner's burden of proof. *See*

*Rezai*, 62 F.3d at 1289 (alien "must present specific credible evidence to support

his claim that he has been persecuted or will be persecuted if deported").

In conclusion, we agree with the BIA that petitioner submitted insufficient

evidence regarding the situation in Ethiopia to support a well-founded fear that he

would be persecuted if he returned. Therefore, petitioner has not established

refugee status, and the BIA was correct in denying his application for asylum.

Because petitioner has not established eligibility for asylum, he cannot meet the

higher standard for withholding of deportation. *See INS v. Cardoza-Fonseca*,

480 U.S. 421, 430-32 (1987). Therefore, we AFFIRM the BIA's dismissal of

petitioner's appeal of the IJ's denial of his application of asylum and withholding

of deportation, and DENY the petition for review.

Entered for the Court

John C. Porfilio
Circuit Judge

-11-